Mara B. Levin, Esq.
Marni E. Weiss, Esq.
HERRICK, FEINSTEIN LLP
Attorneys for Signature Bank
Two Park Avenue
New York, New York 10016
Tel. 212.592.1400
Fax. 212.592.1500
mlevin@herrick.com

**ELECTRONICALLY FILED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
M&I EQUIPMENT FINANCE COMPANY,       :
:
              Plaintiff,    :
:
  v.                                                        :    08 CV 02164 (GEL)(GWG)
:
SIGNATURE BANK,                                      :
              Defendant.    :
:
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED R. CIV. P. 56**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL SUMMARY ........................................................................................................1

PROCEDURAL HISTORY....................................................................................................6

STANDARD OF REVIEW ....................................................................................................6

ARGUMENT..........................................................................................................................7

POINT I   SIGNATURE'S PERFECTED SECURITY INTEREST
          AND RIGHT OF SET OFF ARE SUPERIOR TO M&I's JUDGMENTS .....7

POINT II  M&I HAS FAILED TO ENFORCE ITS JUDGMENT...............................11

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................................7

Caslterigg Master Invs. Ltd. v. Charys Holding Co., No. 07 Civ. 9742,
   2008 WL 449690 (S.D.N.Y. Feb. 19, 2008) ..........................................................................6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................7

D'Amico v. City of N.Y., 132 F.3d 145 (2d Cir. 1998) ................................................................6

Liberty Mut. Ins. Co. v. Leroy Holding Co., 226 B.R. 746 (N.D.N.Y. 1998) ....................8, 9, 10

Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986) .........................................6

Neshewat v. Salem, 365 F. Supp. 2d 508 (S.D.N.Y. 2005), aff'd,
   194 Fed. Appx. 24 (2d Cir. 2006) ..........................................................................................7

Xiao v. Continuum Health Partners, Inc., No. 01 Civ. 8556 (HB),
   2002 WL 1586954 (S.D.N.Y. July 17, 2002), aff'd, 80 Fed Appx. 150 (2d Cir. 2003) ...........6

## STATE CASES

Aspen Indus. v. Marine Midland Bank, 52 N.Y.2d 575, 439 N.Y.S.2d 316 (1981) ............. *passim*

Burstin Investors, Inc. v. K.N. Investors, Ltd, 255 A.D.2d 478, 680 N.Y.S.2d 639
   (2d Dep't 1998) ..................................................................................................................8, 11

Key Lease Corp. v. Manufacturers Hanover Trust, 117 A.D.2d 560,
   499 N.Y.S.2d 66 (1st Dep't 1986) ..........................................................................................11

Kitson & Kitson v. City of Yonkers, 10 A.D.3d 21, 778 N.Y.S.2d 503 (2d Dep't 2004) ...............8

Nardone v. Long Island Trust Co., 40 A.D.2d 697, 336 N.Y.S.2d 325 (2d Dep't 1972) ..............8

New York v. Birch, 124 Misc. 2d 984, 478 N.Y.S.2d 231 (Sup. Ct. N.Y. Co. 1984) ...................12

West Harlem Pork Ctr., Ltd. v. Empire Nat'l Bank, 60 A.D.2d 859,
   400 N.Y.S.2d 859 (2d Dep't 1978) ..........................................................................................8

# **STATUTES**

Debtor & Creditor Law §151(f) (McKinney's 2008) ........................................................................8

**PRELIMINARY STATEMENT**

At all times since the plaintiff's alleged service of the initial restraining notice on Signature Bank on March 5, 2007 until November 15, 2007, the date on which the Bank set off all that remained in the accounts of the judgment debtors (the "Restrained Period"), those very judgment debtors were indebted to the Bank in an amount never less than $8.25 million. And, the Bank at all times had a perfected security interest in and a right to set off the Judgment Debtors' bank accounts--superior to the restraining notices-- pursuant to the specific provisions contained in the loan documents with the Bank, and Section 151 of New York's Debtor and Creditor Law.

Accordingly, while the Bank did not restrain the judgment debtors' accounts for 2 1/2 months after its alleged initial receipt of the first restraining notice, plaintiff's claims still fail since the monies cumulatively deposited into the judgment debtors' accounts over the Restrained Period were far less than the indebtedness owed to the Bank. Thus, even if the Bank timely restrained the judgment debtors' accounts, plaintiff cannot show that (1) Bank funds were ever available to satisfy any part of plaintiff's judgments against the judgment debtors; or (2) that it took any steps to enforce its restraining notices, such as an execution or levy upon the judgment debtors' property.

Accordingly, summary judgment should be awarded to the Bank, dismissing plaintiff's complaint in its entirety, with prejudice.

**FACTUAL SUMMARY**

Rather than enforcing its judgments against Ahava Food Corp. ("Ahava"), Lewis County Dairy Corp. ("LCD") and Moise Banayan ("MB" who, along with Ahava and LCD, are collectively referred to as the "Judgment Debtors"), plaintiff M&I Equipment Finance Company

("M&I") brings this proceeding almost 365 days after the first restraining notice was served on Signature Bank ("Signature" or "the Bank") to enforce its judgments against non-party Signature by claiming that Signature is liable for the full amount of the judgments simply because it allegedly violated two restraining notices served by M&I on Signature Bank -- one on March 5, 2007, and the other on May 8, 2007. (Complaint ¶¶ 7, 8, 11, 12.)

The relevant facts are set forth in the Declaration of Robert A. Bloch ("Bloch Decl."), dated June 2, 2007 ("Bloch Decl."), the Declaration of Andrew Gold, Esq., dated June 2, 2008 ("Gold Decl."), the Local Rule 56.1 Stmt. of Material Undisputed Facts, dated June 2, 2008 ("56.1 Stmt."), and the pleadings are annexed to the Marshalling Declaration of Mara B. Levin, Esq., dated June 2, 2008 ("Levin Decl.").

Briefly summarized, beginning in 2005 and continuing for more than two years, Signature made a series of loans to the Judgment Debtors. Bloch Decl. ¶¶ 3, 16. Indeed, as of March 5, 2007, the date on which service was allegedly made on the Bank of the first Restraining Notice (the "First Restraining Notice") which was predicated upon a $658,994.02 judgment M&I (the "First M&I Judgment") had obtained against the Judgment Debtors on January 12, 2007 (the "First M&I Judgment"), the Bank held $7.5 million in notes signed by Ahava and a $750,000 note from LCD. Bloch Decl. ¶¶ 6, 10; 56.1 Stmt. ¶¶ 4, 8. In connection with that indebtedness, Ahava and LCD on August 22, 2005, executed (1) a Master Credit Facility Agreement (the "Credit Agreement") granting the Bank the right to set off and apply all deposits (general or special, time or demand, provisional or final) at any time held by the Bank to or for the credit or the account of the Judgment Debtors, against any of their obligations, Bloch Decl. ¶¶ 4, 5, Ex. A §8.20; 56.1 Stmt. ¶¶ 1-3; and (2) a Security Agreement ("Security Agreement") providing Signature with a first lien on and security interest in all of the assets of

Ahava and LCD, which included, inter alia, all personal assets, deposit accounts, securities and investment property. Bloch Decl. ¶ 7, Ex. D; 56.1 Stmt. ¶ 5. Further, LCD and MB signed a Joint and Several Guarantee of Payment Agreement whereby they became jointly and severally liable for all indebtedness (future and past) between Ahava and Signature Bank. Bloch Decl. ¶ 9, Ex. F; 56.1 Stmt. ¶ 7.

In connection with the Security Agreement, Signature filed financing statements pursuant to the Uniform Commercial Code to perfect Signature's security interests with the State of New York. Bloch Decl. ¶¶ 8, 18, Ex. E; 56.1 Stmt. ¶ 6.

Thus, at all times since service of the First Restraining Notice, Signature maintained the right to set off all the monies in the accounts of Ahava, LCD and MB against the indebtedness of the Judgment Debtors which, at all relevant times, was in excess of $8.25 million. This right of set off existed both under the loan documents and under New York's Debtor and Creditor Law Section 151. Bloch Decl. ¶ 5, Ex. A, §8.20. The Bank learned of the First M&I Judgment from MB on or around March 1, 2007, which constituted an event of default under the Credit Agreement. Bloch Decl. ¶ 12.

While the Bank acknowledged receipt of the First Restraining Notice and Information Subpoena on March 5, 2007, it did not restrain any of the accounts of the Judgment Debtors at that time.[1] Bloch Decl. ¶ 23, Ex. S; 56.1 Stmt. ¶ 22. On April 7, 2007, Bruce Chang, a Legal Servings Associate at the Bank, after receiving another copy of the First Restraining Notice via telefax on April 3, 2007, responded to the Information Subpoena stating that there were no monies on deposit for any of the accounts maintained by the Judgment Debtors and that one

---

[1] While not relevant for purposes of this motion, the Bank never received the First Restraining Notice at this time despite the fact that an employee of a company responsible for retrieving and sorting mail for the Bank apparently signed a return receipt at the post office acknowledging receipt of an envelope from M&I's counsel. (Bloch Decl. ¶ 23 n.2.)

account was overdrawn. Bloch Decl. ¶ 24, Ex. T; 56.1 Stmt. ¶ 21. Mr. Chang also mistakenly answered "no" to questions asking whether the Judgment Debtors were indebted to the Bank and whether the Bank had a lien on the Judgment Debtors' property. Id. However, because there was no monies in any of the accounts, none of the accounts were restrained. Id.

The Complaint alleges that on April 23, 2007, M&I obtained a second judgment against the Judgment Debtors in the amount of $60,553.66 (the "Second M&I Judgment"), and in connection therewith sent a second Restraining Notice which was received by the Bank on May 8, 2007 the ("Second Restraining Notice"). Bloch Decl. ¶ 25; Levin Decl., Ex. A; 56.1 Stmt. ¶¶23-24. On May 23, 2007, the Bank restrained the accounts of the Judgment Debtors by freezing all accounts, removing funds in those accounts that had a positive balance, and depositing those funds into a Suspense Account at the Bank where all restrained funds are deposited. Bloch Decl. ¶ 26. (The Bank did not respond a second time to the Information Subpoena served with the Second Restraining Notice. Id.; 56.1 Stmt. ¶ 25.) The Bank restrained and deposited in the Suspense Account $26,864.30 from two Ahava accounts and $6,000 from two LCD accounts. Id. At no point thereafter were any withdrawals made from any of the Judgment Debtors' accounts except *by the Bank* (1) in accordance with its restraint procedures (by withdrawing funds from the account and transferring them to the Suspense Account); or (2) to set off and apply funds on deposit to the outstanding indebtedness owed by the Judgment Debtors to the Bank. Id.

Indeed, on six separate occasions over the course of six months beginning in June, 2007, the Bank both withdrew from the Judgment Debtors' accounts to transfer into the Suspense Account, and set off from those same accounts to pay principal, interest and fees owed by the Judgment Debtors, as follows:

- On June 1, 2007, the Bank set off $364.61 from the Ahava account and transferred $8,989.30 into the Suspense Account.

- On or about June 5, 2007, the Bank set off $32,499.69 from the Suspense Account that contained the restrained funds of Ahava and LCD.

- On or about July 6, 2007, the Bank set off $42,376.27 from an Ahava account for payment of principal and interest in connection with defaults by the Judgment Debtors and $70.68 for fees in connection with the revolving credit[2].

- On July 27, 2007, the Bank transferred $3,208.45 from an Ahava account into the Suspense Account.

- On September 18, 2007, the Bank set off $38,452.32 for interest owed under the loan documents and $1,729.41 to pay down principal under the $5.5 million promissory note for a total of $40,181.73.

- And, on November 15, 2007, as a result of the Judgment Debtors' final default under the loan documents, the Bank set off $33,808.10, all that remained on deposit in the Judgment Debtors' Signature accounts. At no time thereafter was there any activity in any of the Judgment Debtors' accounts.

Bloch Decl. ¶¶ 26-28, Ex. V.

Soon thereafter, the Bank commenced an action against the Judgment Debtors (as well as affiliated companies to Ahava, and MB's wife, Ana Banayan) in the Supreme Court of the State of New York for the County of New York. Bloch Decl. ¶ 21; 56.1 Stmt. ¶ 18. On March 14, 2008, the Judgment Debtors and the others were found liable and a judgment was awarded to

---

[2] Around this time, the Bank, through its legal counsel, began communicating with M&I's counsel and supplying information including the relevant loan documents and UCCs to demonstrate that the Judgment Debtors were indebted to the Bank for over $8,000,000 and that the Bank had a perfected security interest in all monies held by the Bank. (Gold Decl., ¶¶ 2-11, Ex. A).

Signature in the amount of $9,338,662.18 (the "Signature Judgment"), which remains unsatisfied to date. Bloch Decl. ¶ 22, Ex. R; 56.1 Stmt. ¶ 19.

## PROCEDURAL HISTORY

Two days before the First Restraining Notice was set to expire, on March 3, 2008, plaintiff filed its complaint against Signature alleging violation of the restraining notices and seeking $719,547.68 in damages, the amount of M&I's Judgments. Levin. Decl., ¶ 2, Ex. A.

In response to M&I's complaint, on March 25, 2008, Signature served its Answer and asserted six affirmative defenses which included Signature's right of set off and plaintiff's failure to execute upon or enforce the restraining notices. Levin Decl., ¶ 3, Ex. B.

## STANDARD OF REVIEW

Summary judgment is appropriate "where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). "[S]ummary judgment may be granted notwithstanding the absence of discovery." Caslterigg Master Invs. Ltd. v. Charys Holding Co., No. 07 Civ. 9742, 2008 WL 449690, at *2 (S.D.N.Y. Feb. 19, 2008) (Lynch, D.J.).

While it is true that the Court must view the evidence presented in the light most favorable to the non-moving party, "conclusory statements" that merely contradict the evidence set forth in the moving party's motion are insufficient to create triable issues of fact. See Xiao v. Continuum Health Partners, Inc., No. 01 Civ. 8556 (HB), 2002 WL 1586954, at *4 (S.D.N.Y. July 17, 2002), aff'd, 80 Fed Appx. 150 (2d Cir. 2003). Indeed, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Equally important, in a case such as this, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

For the reasons set forth below, Signature's motion for summary judgment should be granted because: (1) Signature's right of set off is superior to the Restraining Notices (and the M&I Judgments) and, as a result of the indebtedness owed to the Bank, at no time were there funds available to satisfy any portion of the M&I Judgments; and (2) M&I suffered no damages as a result of Signature's purported violation of the Restraining Notices because M&I failed to execute or levy upon the Restraining Notices.

## ARGUMENT

### POINT I

### SIGNATURE'S PERFECTED SECURITY INTEREST AND RIGHT OF SET OFF ARE SUPERIOR TO M&I'S JUDGMENTS

Courts use a two-step analysis to determine whether money or property in possession of a third party must be transferred to a judgment creditor pursuant to CPLR 5222(b). First, a judgment creditor must be shown to have an interest in the money or property sought. Second, the judgment creditor "must be shown to be entitled to possession or have superior right to the property." Neshewat v. Salem, 365 F. Supp. 2d 508, 523-24 (S.D.N.Y. 2005), aff'd, 194 Fed. Appx. 24 (2d Cir. 2006). Put another way, the creditor must show that the funds identifies were

available to satisfy the judgment at the time the restraining notice was served. See <u>Nardone v. Long Island Trust Co.</u>, 40 A.D.2d 697, 336 N.Y.S.2d 325 (2d Dep't 1972).

Service of a restraining notice pursuant to CPLR 5222, the statute which governs restraining notices, does not confer priority upon the judgment creditor in the form of a lien on the judgment debtor's property. <u>Kitson & Kitson v. City of Yonkers</u>, 10 A.D.3d 21, 25, 778 N.Y.S.2d 503, 508 (2d Dep't 2004); <u>Burstin Investors, Inc. v. K.N. Investors, Ltd</u>, 255 A.D.2d 478, 680 N.Y.S.2d 639 (2d Dep't 1998). Pursuant to New York law, "a perfected security interest in property affords the secured creditor a superior claim to that property as against other creditors." <u>Liberty Mut. Ins. Co. v. Leroy Holding Co.</u>, 226 B.R. 746, 754 (N.D.N.Y. 1998). Thus, a perfected security interest "remains superior to a judgment obtained against the debtor, especially where that judgment arose subsequent to perfection of the security interest and where that judgment had not been further enforced by an execution or levy upon the judgment debtor's property." <u>Id</u>. Similarly, a right of set off is superior to any intervening rights of judgment creditors. <u>Aspen Indus. v. Marine Midland Bank</u>, 52 N.Y.2d 575, 580-82, 439 N.Y.S.2d 316, 319 (1981). Even without a specific right of set off set forth in the agreements between the parties, a creditor upon receiving any execution against any property held by such creditor, has a statutory right to "set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor...." Debtor & Creditor Law §151(f) (McKinney's 2008); <u>see</u> also <u>West Harlem Pork Ctr., Ltd. v. Empire Nat'l Bank</u>, 60 A.D.2d 859, 859, 400 N.Y.S.2d 859, 859 (2d Dep't 1978) ("Pursuant to [§151], the debtor bank would have had a clear right to set off the amount of the judgment debtor's deposit at any time after the issuance of execution." ).

The New York Court of Appeals' discussion in <u>Aspen Indus.</u>, is dispositive of the case at bar. 52 N.Y.2d at 575, 439 N.Y.S.2d at 316. In <u>Aspen Indus.</u>, the plaintiff obtained a judgment and served a restraining notice on defendants Marine Midland Bank. <u>Id</u>. at 577-78, 439 N.Y.S.2d at 316. Notwithstanding its receipt of the restraining notice, the account remained active although at no time did Marine allow the balance in the accounting to drop below twice the amount due on the judgment, as is required by CPLR 5222. <u>Id</u>. at 581, 439 N.Y.S.2d at 316. At no time did plaintiff execute or levy on the account and, ultimately, Marine exercised its right of set off in partial satisfaction of monies owed by the judgment debtor to marine under a promissory note. <u>Id</u>.

The Court held that even if Marine could be found to have violated the restraining notice, such a violation would not subject Marine to liability because under Section 151 of New York's Debtor and Creditor Law, Marine had a right of set off to satisfy a pre-existing obligations of the judgment debtor to Marine. <u>Id</u>. at 582, 439 N.Y.S.2d at 316. Therefore, plaintiff could not demonstrate that it sustained damages as a result of Marine's disobedience of the restraining notice.

Similarly, the decision in <u>Liberty Mut.</u> is instructive. In <u>Liberty Mut.</u>, plaintiff sued defendant for, *inter alia*, violation of a restraining notice served upon Fort Ann Express Inc. <u>Id</u>. at 226 B.R. at 753. Because of outstanding indebtedness owed to defendant by Fort Ann, defendant had assumed management control of Fort Ann's income, expense accounts and bank accounts, in which defendant had a perfected security interest. <u>Id</u>. at 753-54. Fort Ann, under defendant's control, received deposits far in excess of the amount sought to be restrained but far lower than the outstanding indebtedness owed to defendant. No funds were ever restrained and a month after service of the restraining notice, Fort Ann filed for bankruptcy. <u>Id</u>. at 753.

The Court noted that defendant's perfected security interest in the accounts receivables of the judgment debtor remained superior to the judgment obtained against that debtor by the plaintiff "especially where that judgment arose subsequent to perfection of the security interest and where the judgment had not been further enforced by an execution or levy upon the judgment debtor's property." Id. at 754. As a result of this superior claim, plaintiff's "restraining notice, and any other efforts it undertook or would have undertaken would necessarily and inevitably have been defeated...." Id. Thus, plaintiff failed to demonstrate that defendant's domination of the judgment debtor's property and concomitant failure to restrain any of the judgment debtor's accounts caused any injury to plaintiff. Id.

As in Aspen Indus. and Liberty Mut., it is clear that Signature had a first lien on and perfected security interest in all of the assets of Ahava and LCD, including all personal assets, deposit accounts, securities and investment property since August, 2005 -- prior to and continuing throughout the Restrained Period. Bloch Decl. ¶¶ 7, 8, 17, Exs. D, E & N; 56.1 Stmt. ¶¶ 1-6, 11. Moreover, Signature had a right of set off pursuant to Section 8.20 of the Master Credit Facility Agreement which was signed by all of the Judgment Debtors on August 22, 2005 -- a year and a half before M&I obtained its judgment. This right of set off could be exercised "at any time and from time to time." Bloch Decl. ¶ 5, Ex. A; 56.1 Stmt. ¶¶ 2-3. As set forth in the Bloch Decl., at the time of the service of the Restraining Notice in March 2007, the Judgment Debtors were indebted to the Bank in an amount in excess of $8,250,000. Bloch Decl. ¶ 20. While Signature restrained the accounts as of May 23, 2007, it exercised its right of set off against the restrained funds on four separate occasions -- on June 5, 2007, July 6, 2007, September 18, 2007 and November 15, 2007. Bloch Decl. ¶¶ 27, 28.

While Signature did not restrain the accounts in connection with the First Restraining Notice in March, 2007, at no time did the cumulative deposits made in those accounts over the Restrained Period approach the Judgment Debtors' indebtedness to the Bank. Bloch Decl. ¶ 30; 56.1 Stmt. ¶ 22. Thus, even if the accounts had been restrained and an execution served, there would not have been any funds available to satisfy the M&I Judgments. See Aspen Indus.; Key Lease Corp. v. Manufacturers Hanover Trust, 117 A.D.2d 560, 561-62, 499 N.Y.S.2d 66, 68 (1st Dep't 1986) (denying petition by judgment creditor to require bank to deliver personal property of debtor held by bank as collateral for demand notes because rights of creditor in property were not shown to be superior to possessor rights of bank when debtor cross-collateralized his property to guaranty payment for notes to bank).

Accordingly, M&I cannot establish that there were any funds in the Judgment Debtors accounts available to satisfy any part of the M&I Judgments and as a result, its claims must fail.

## POINT II

### M&I HAS FAILED TO ENFORCE ITS JUDGMENT

As repeatedly held by New York courts interpreting CPLR 5222, service of a restraining notice pursuant to CPLR 5222 does not confer priority upon a judgment creditor in the form of a lien on the judgment debtor's property. Aspen Indus., 52 N.Y.2d at 580, 439 N.Y.S.2d at 319 ("restraining notice confers no priority upon the judgment creditor in the form of a lien on the judgment debtor's property."); Burstin Investors, Inc., 255 A.D.2d at 480, 680 N.Y.S.2d at 641 (same). Instead, "a judgment creditor serving a restraining notice ordinarily is required to take further steps in enforcing his judgment, such as an execution or levy upon the judgment debtor's property, in order to prevent the intervening rights of third parties from taking precedence over his claim against the judgment debtor." Aspen Indus., 2 N.Y.2d at 580, 439 N.Y.S.2d at 319.

See also Burstin Investors, Inc., 255 A.D.2d at 480, 680 N.Y.S.2d at 641 (same); New York v. Birch, 124 Misc. 2d 984, 985, 478 N.Y.S.2d 231, 233 (Sup. Ct. N.Y. Co. 1984) ("In order for a judgment to gain status in the ranking of priorities, there must be either a levy, an order directing delivery of property, or the appointment of a receiver.")

Indeed, in Aspen Indus. the Court of Appeals, relying upon section 151 of the Debtor and Creditor Law, held that the defendant bank was not liable for violation of a restraining notice because the plaintiff failed to take any steps to enforce its judgment. 52 N.Y.2d at 580, 439 N.Y.S.2d at 319. The Court reasoned that in order to recover, a judgment creditor:

> must establish that it sustained damages as a result of the garnishee's disobedience of the notice. It is necessary, therefore, for the judgment creditor to demonstrate that property of the judgment debtor was available to satisfy the judgment at the time the restraining notice was in effect. . . Here, however, because of [the bank's] right of setoff to satisfy a pre-existing obligation of the judgment debtor to the bank, Aspen cannot establish such damages.

Id. at 581-82, 439 N.Y.S.2d at 320.

Similar to the facts in Aspen Indus., M&I cannot establish any damages because it failed to take any steps to demonstrate that the Judgment Debtors' property held by Signature was available to satisfy its judgment. Bloch Decl. ¶ 29. Yet, even if the Bank had provided accurate information in the Information Subpoena served along with the Restraining Notice, the result reached here would be the same. While arguably M&I would have known a few months earlier about the indebtedness of the Judgment Debtors to the Bank and the Bank's lien and right of set off, even if M&I executed upon its restraining notices there never would have been any funds available to satisfy any portion of the M&I Judgments since the Judgment Debtors were always

indebted to the Bank far in excess of what was cumulatively deposited into or being held by the Bank during the Restrained Period. Bloch Decl. ¶¶ 20, 30. And since Signature possessed the unlimited right to set off monies in the Judgment Debtors' accounts at any time from August 22, 2005 until it fully and finally exercised that right of set off on November 15, 2007, and such right of set off was superior to M&I's Judgments, M&I cannot show that it has sustained any damages. See Bloch Decl. ¶¶ 5, 13, 15, 28, 30.

Accordingly, summary judgment is warranted.

## CONCLUSION

For all the foregoing reasons, Defendant Signature Bank respectfully submits that the Court should grant its motion for summary judgment pursuant to Fed. R. Civ. P. 56 dismissing the Complaint in its entirety.

Dated: New York, New York
       June 2, 2008

HERRICK, FEINSTEIN LLP

By: /s/ Mara B. Levin
    Mara B. Levin, Esq. (mlevin@herrick.com)
    Marni E. Weiss, Esq.
Attorneys for Defendant Signature Bank
Two Park Avenue
New York, New York 10016
Tel. 212.592.1400
Fax. 212.592.1500