Mara B. Levin, Esq.  
Marni Weiss, Esq.  
HERRICK, FEINSTEIN LLP  
Attorneys for Signature Bank  
Two Park Avenue  
New York, New York  10016  
Tel. 212.592.1400  
Fax. 212.592.1500  
mlevin@herrick.com

**ELECTRONICALLY FILED**

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  
- - - - - - - - - - - - - - - - - - - - - - - - - - - x  

M&I EQUIPMENT FINANCE COMPANY, : 08 CV 02164 (GEL)(GWG)  

               Plaintiff, : **LOCAL RULE 56.1**  
   v. : **STATEMENT OF MATERIAL**  
                  : <u>**UNDISPUTED FACTS**</u>  

SIGNATURE BANK,  
               Defendant. :  

- - - - - - - - - - - - - - - - - - - - - - - - - - - x  

     Defendant Signature Bank ("Signature") hereby submits this statement of material undisputed facts pursuant to Rule 56 of the Federal Rules of Civil Procedure and pursuant to this Court's Local Rule 56.1 in support of its motion seeking an order granting summary judgment against plaintiff M&I Equipment Finance Company ("M&I") dismissing the Complaint, dated March 4, 2008  (the "Complaint").

     1.     In August, 2005, Ahava Food Corp. ("Ahava"), Lewis County Dairy Corp. ("LCD") and Moise Banayan ("MB" who, along with Ahava and LCD, hereinafter being referred to as the "Judgment Debtors") entered into a Master Credit Facility Agreement (the "Credit Agreement") pursuant to which Signature agreed, *inter alia*, to extend up to $7,500,000 to the Judgment Debtors.

2. Pursuant to Section 7.01(i) of the Credit Agreement, a default shall occur if:

> a final judgment or judgments for the payment of money in excess of an aggregate amount of $50,000 (or the equivalent in a foreign currency) for any or all of the [Judgment Debtors] or shall be rendered against any of them (as applicable), and the same shall remain undischarged, unbonded and unstayed for a period of 30 days, unless the Bank is provided with documentary evidence and information satisfactory to the Bank that the judgment is fully covered by insurance.

3. Pursuant to Section 8.20 of the Credit Agreement, if an event of default occurs, Signature is:

> authorized *at any time and from time to time*, to the fullest extent permitted by law, to set off and apply and all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Bank to or for the credit or the account of the [Judgment Debtors], against any or all of the obligations of any or all of the [Judgment Debtors] now or hereafter existing under this Agreement. . . .

(Emphasis supplied).

4. On August 22, 2005 Ahava executed two promissory notes made payable to Signature, one in the principal amount of $2 million and the other in the principal amount of $5.5 million.

5. On this same date, Ahava, LCD and Signature executed a Security Agreement as security for payment of all obligations owed by Ahava. The Security Agreement provided Signature with a first lien on and security interest in all of the assets of Ahava and LCD, which included all personal assets, deposit accounts, securities and investment property.

6. Signature filed financing statements pursuant to the Uniform Commercial Code with the State of New York.

7. LCD and MB signed a Joint and Several Guarantee of Payment, dated

August 22, 2005.

8. LCD executed a promissory note to Signature dated January 24, 2007 in the principal amount of $750,000. Ahava became liable for that Note pursuant to a Continuing Guaranty earlier executed by Ahava dated August 5, 2006.

9. M&I obtained a judgment against the Judgment Debtors in the amount of $658,994.02 on January 12, 2007 (the " First M&I Judgment").

10. The Bank entered into a Forbearance Agreement with the Judgment Debtors dated June 11, 2007 (the "Forbearance Agreement"), and subsequent Joinder Agreement, Waiver and First Amendment to the Forbearance Agreement ("Joinder Amendment"), dated August 27, 2007, pursuant to which Signature extended the time for repayment of all obligations under the Credit Agreement to September 11, 2007.

11. The Forbearance Agreement acknowledged the M&I Judgment to be an "Existing Default", and expressly provided as follows:

> (a) The [Judgment Debtors] acknowledge that the Existing Defaults have occurred. The [Judgment Debtors] acknowledge that the [Bank] has the absolute and unconditional right (i) to declare all loans (collectively, the "Loans") made to the applicable Borrowers pursuant to the applicable Loan Documents and all obligations, indebtedness and liabilities of the [Judgment Debtors] under the Loan Documents (collectively, the "Obligations") in each case immediately due and payable in full and (ii) to demand payment in full of the Obligations. *The [Judgment Debtors] further acknowledge that as a result of the Existing Defaults, the [Bank] is entitled to exercise any of its rights and remedies immediately as provided in the Loan Documents, without further notice or opportunity to cure.*
>
> ****
>
> (c) The parties hereto agree that the execution and delivery of this Forbearance Agreement and any other Forbearance Documents shall not prejudice any right or rights which the Lender now has or may have in the future under any of the Loan Documents in the event of any other breach or violation of any term, condition, agreement or covenant set forth in this Forbearance Agreement or any of the other Transaction Documents.

(Emphasis added.)

12. On August 27, 2007, Ahava executed a fourth note made payable to Signature in the principal amount of $1,750,000.

13. On August 27, 2007, LCD and MB entered into a Joint and Several Guarantee of Payment on that same date.

14. On August 27, 2007, Ahava and LCD entered into a second Security Agreement.

15. On August 27, 2007, MB entered into a Pledge Agreement with Signature.

16. Signature filed financing statements pursuant to the Uniform Commercial Code with the State of New York on August 29, 2007.

17. On September 11, 2007, the Judgment Debtors and Signature Bank executed a Second Amendment to the Forbearance Agreement, pursuant to which Signature extended the time for repayment of all obligations under the Credit Agreement to October 5, 2007.

18. In December, 27, 2007 Signature filed a lawsuit against the Judgment Debtors.

19. On March 14, 2008, the Judgment Debtors and others were found jointly and severally liable and a judgment was awarded to Signature in the amount of $9,338,662.16, of which the Judgment Debtors, along with Yoni Realty LLC, St. Lawrence Food Corp., Schwartz and Sons Inc. were found jointly and severally liable to Signature in the amount of $7,556,482.37, and those same individuals/entities as well as Ana Banayan were found jointly and severally liable to Signature in the amount of $1,782,050.67 (the "Signature Judgment").

20. On April 3, 2007, M&I's counsel, Philip Frankel, Esq. of Bond,

Schoeneck & King, PLLC M&I faxed to Signature a restraining notice and information subpoena (the "First Restraining Notice").

21. On April 7, 2007, Bruce Chang, a Legal Servings Associate at the Bank, responded to the Information Subpoena stating that there were no monies on deposit in any of the accounts maintained by the Judgment Debtors, that one account was overdrawn, that the Judgment Debtors were not indebted to the Bank and that the Bank did not have a lien on the Judgment Debtors' property.

22. The Bank did not restrain any accounts of the Judgment Debtors in connection with the First Restraining Notice.

23. On April 23, 2007, M&I obtained a second judgment against the Judgment Debtors in the amount of $60,553.66 (the "Second M&I Judgment").

24. M&I served a second restraining notice and information subpoena on Signature in connection with the Second M&I Judgment on May 8, 2007 (the "Second Restraining Notice").

25. The Bank did not respond a second time to the Information Subpoena served with the Second Restraining Notice.

26. In July, 2007, Signature's legal counsel, Andrew Gold, Esq. of Herrick, Feinstein LLP, began corresponding with Louis Orbach, Esq. of Bond, Schoeneck & King, PLLC, counsel for M&I, concerning the restraining notices and information subpoenas.

27. On July 16, 2007, Mr. Orbach and Mr. Gold exchanged several emails and Mr. Gold, on behalf of Signature, supplied to Mr. Orbach certain loan documents and other information (including the Security Agreement, Uniform Commercial Code filings, promissory notes and loan balances) evidencing the Judgment Debtors' indebtedness to the Bank.

28. Then, on September 10, 2007, Mr. Orbach sent to Mr. Gold via email a subpoena duces tecum and subpoena ad testificandum on Signature, returnable on October 4, 2007. Mr. Orbach requested that Mr. Gold accept service of this subpoena on Signature's behalf.

29. On September 10, 2007, Mr. Orbach sent to Mr. Gold a subpoena duces tecum and subpoena ad testificandum, returnable on October 4, 2007, seeking Mr. Gold accept service on behalf of Signature.

30. Signature did not object to the production of a witness for deposition.

31. On October 4, 2007, Signature provided responses and documents to M&I's subpoena duces tecum including account information for the Judgment Debtors' accounts at the Bank.

32. M&I commenced this action by the filing of its Complaint on March 3, 2008.

33. Issue was joined by the filing of Signature's Answer on March 25, 2008.

Dated: New York, New York
      June 2, 2008

HERRICK, FEINSTEIN LLP

By: /s/ Mara B. Levin
Mara B. Levin (mlevin@herrick.com)
Marni E. Weiss
*Attorneys for Defendant*
 *Signature Bank*
2 Park Avenue
New York, New York  10016
(212) 592-1400