UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

M&I EQUIPMENT FINANCE COMPANY,

                    Plaintiff,                    Civil Action No.:
                                                  08-CV-02164 (GEL/GWG)

        v.

SIGNATURE BANK,

                    Defendant.

-------------------------------------------------------------


**PLAINTIFF M&I EQUIPMENT FINANCE COMPANY'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**(Electronically filed)**


BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202
Telephone:  (315) 218-8000
Fax:  (315) 218-8100

Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

    I.      M&I's First Judgment, Restraining Notice and Information Subpoena ...................... 2

    II.     The Judgment Debtors' Alleged, But Unquantified, Indebtedness to Signature .......... 2

    III.    Signature's Admitted Waiver of Its Purported Right to Set Off .................................. 5

    IV.    Signature's Failure to Timely and Truthfully Respond to M&I's First
           Information Subpoena ................................................................................................. 7

    V.     M&I's Second Judgment, Restraining Notice and Information Subpoena ................... 8

    VI.    Signature's Failure to Respond to M&I's Second Information Subpoena ................... 8

    VII.   The First Communications with Signature's Counsel ................................................. 8

    VIII.  Signature's Refusal to Comply With M&I's Federal Subpoena Duces Tecum .......... 9

    IX.    Signature's Post-Suit Admissions Regarding Its Violations of M&I's
           Restraining Notices ................................................................................................... 11

ARGUMENT .......................................................................................................................... 13

    I.      Overview:  Restraining Notices and Information Subpoenas Under
           N.Y. C.P.L.R. § 5222 ............................................................................................... 13

    II.     As a Matter of Law, Signature Cannot Mount an Affirmative Defense
           Based on a Purported Right to Set Off That It Admits It Did Not Exercise;
           M&I is Entitled to Summary Judgment ..................................................................... 14

    III.    Alternatively, Questions of Fact Preclude Signature's Motion for Summary
           Judgment on its Affirmative Defense ....................................................................... 19

    IV.    Signature's Defense That "M&I Failed to Enforce Its Judgment" Is Meritless ......... 23

1436831.1

**TABLE OF CONTENTS (cont'd)**

Page

CONCLUSION ................................................................................................................. 25

APPENDIX 1     Funds Wrongfully Released from Judgment Debtors' Signature Bank Accounts
                3/5/07 - 5/23/07

1436831.1

# TABLE OF AUTHORITIES

## CASES

Page

Accounts Receivable Solutions, Inc. v. Tompkins Trustco, Inc.,
    45 A.D.3d 612, 846 N.Y.S.2d 272 (App. Div., 2d Dep't 2007)...................................18

American Oil Co. v. Coughlin,
    261 A.D. 852, 24 N.Y.S.2d 731 (App. Div. 3d Dep't 1941)........................................19

Arias-Zeballos v. Tan,
    2008 U.S. Dist. LEXIS 25852 (S.D.N.Y. Mar. 28, 2008) ...........................................20

Aspen Industries, Inc. v. Marine Midland Bank,
    52 N.Y.2d 575, 439 N.Y.S.2d 316 (1981)..................................................16, 18, 24, 25

Banque Arabe Et Internationale D'Investissement v. Bulk Oil (USA) Inc.,
    726 F. Supp. 1411 (S.D.N.Y. 1989).......................................................................15, 20

Blue v. Cablevision Systems, New York City Corp.,
    2006 U.S. Dist. LEXIS 96449 (E.D.N.Y. July 5, 2007).............................................13

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................................19

City of New York v. Birch,
    124 Misc. 2d 984, 478 N.Y.S.2d 231 (Sup. Ct., N.Y. Co. 1984) ...............................16

EBER-NDC, LLC v. Star Indus., Inc.,
    42 A.D.3d 873, 839 N.Y.S.2d 650 (App. Div., 4th Dep't 2007)..................................19

GMA Accessories, Inc. v. Croscill, Inc.,
    2007 U.S. Dist. LEXIS 17589 (S.D.N.Y. Mar. 13, 2007) ..........................................22

Hellstrom v. United States Dep't of Veterans Affairs,
    201 F.3d 94 (2d Cir. 2000)........................................................................................22

Kates v. Marine Midland Bank, N.A.,
    143 Misc. 2d 721, 541 N.Y.S.2d 925 (Sup. Ct. Monroe Co. 1989)................15, 18, 21

Kinstler v. First Reliance Standard Life Ins. Co.,
    1997 U.S. Dist. LEXIS 10284 (S.D.N.Y. July 16, 1997) ...........................................19

1436831.TOA

Mazzuka v. Bank of North America,
    53 Misc. 2d 1053, 280 N.Y.S.2d 495 (Civ. Ct., Queens Co. 1967)............................18

Nardone v. Long Island Trust Co.,
    40 A.D.2d 697, 336 N.Y.S.2d 325 (App. Div., 2d Dep't 1972)..................................18

National Bank of Northern New York v. Shaad,
    60 A.D.2d 774, 400 N.Y.S.2d 965 (App. Div., 4th Dep't 1977)...........................15, 20

Overall v. Estate of L.H.P. Klotz,
    52 F.3d 398 (2d Cir. 1995).................................................................................19

Plaza Hotel Assoc. v. Wellington Assoc., Inc.,
    84 Misc. 2d 777 (Sup. Ct. N.Y. Co. 1975) .............................................................14, 23

Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.,
    47 Misc. 2d 741, 263 N.Y.S.2d 354 (Sup. Ct., N.Y. Co. 1965) ...............13, 15, 23, 24

Tiger Security Group, Inc. v. New York,
    2007 N.Y. Misc. LEXIS 7654 (Ct. Cl. Sept. 25, 2007) ........................................19, 21

Trojan Hardware Co., Inc. v. Bonacquisti Constr. Corp.,
    141 A.D.2d 278, 534 N.Y.S.2d 789 (App. Div., 3d Dep't 1988)................................21

U.S. v. Haney,
    2008 U.S. Dist. LEXIS 44223 (E.D.N.Y. June 4, 2008) ..........................13, 14, 23, 24

U.S. v. Sterling National Bank & Trust Co. of New York,
    494 F.2d 919 (2d Cir. 1974)...............................................................................15, 24

Van Gaasbeck v. Webatuck Cent. Sch. Dist. No. 1,
    21 N.Y.2d 239, 287 N.Y.S.2d 77 (1967) ...................................................................18

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000)..................................................................................20

## STATUTES

Fed. R. Civ. P. 5.2(a) ............................................................................................12

Fed. R. Civ. P. 30(b)(6)...........................................................................................9

Fed R. Civ. P. 45 ....................................................................................................9

Fed. R. Civ. P. 69...................................................................................................9

1436831.TOA

Fed. R. Civ. P. 69(a) ............................................................................13

N.Y. C.P.L.R. § 105(i) ..........................................................................24

N.Y. C.P.L.R. § 5222 ........................................................................2, 13

N.Y. C.P.L.R. § 5222(b) ...................................................13, 14, 17, 24

N.Y. C.P.L.R. §§ 5223 ...................................................................14, 24

N.Y. C.P.L.R. § 5224(a)(3)............................................................2, 7, 8, 14

N.Y. Debtor & Creditor L. § 151 ..........................................................14

1436831.TOA

## PRELIMINARY STATEMENT

Signature Bank ("Signature") has moved for summary judgment on its affirmative defense that it had a "right to set off" when it received the restraining notices issued on behalf of M&I Equipment Finance Company ("M&I"). However, Signature *admits* that:

- It received M&I's first restraining notice, in the amount of $658,994.02, on March 5, 2007;

- It received M&I's second restraining notice, in the additional amount of $60,533.66, on May 14, 2007;

- It failed to honor M&I's restraining notices for at least *two and a half months*, from March 5, 2007 to May 23, 2007 (the "Unrestrained Period");

- During the Unrestrained Period, it allowed M&I's judgment debtors to transfer no less than $6,641,157.04 out of their accounts at Signature, far more than would have sufficed to satisfy M&I's judgments; and

- During the Unrestrained Period it *never* exercised any purported right to set off.

These admissions not only defeat Signature's motion for summary judgment, they entitle M&I to judgment as a matter of law. Accordingly, M&I opposes Signature's summary judgment motion and cross-moves for summary judgment in its own right.

As a matter of law, Signature cannot excuse its plain violation of M&I's restraining notices by asserting that it had a purported right to set off that it never exercised during the relevant time period. But even assuming, *arguendo*, that Signature could mount an affirmative defense based on a purported right to set off that it did not exercise, questions of fact (including, but not limited to, a question of whether Signature *waived* its alleged right to set off) would preclude summary judgment for Signature on that affirmative defense.

## STATEMENT OF FACTS

### I.    M&I's First Judgment, Restraining Notice and Information Subpoena

M&I obtained a judgment against Moise Banayan, Ahava Food Corp. ("Ahava")

and Lewis County Dairy Corp. ("LCD") (collectively, "the Judgment Debtors") for breach of

contract in the amount of $658,994.02 on January 12, 2007, in the United States District Court

for the Northern District of New York.  Orbach Decl., Ex. 1.

M&I served a restraining notice in the amount of the $658,994.02 judgment on

Signature via certified mail, return receipt requested, on February 28, 2007 (the "First

Restraining Notice").[1]  Orbach Decl., Ex. 2.  M&I served an information subpoena on Signature

with that restraint (the "First Information Subpoena").  *Id.*[2]  Signature received M&I's First

Restraining Notice and Information Subpoena on March 5, 2007.  Orbach Decl., Ex. 3; Bloch

Decl., ¶ 23.  Signature admits that it acknowledged receipt when its agent signed for those papers

on that date.  Bloch Decl., ¶ 23 & n.2.

### II.    The Judgment Debtors' Alleged, But Unquantified, Indebtedness to Signature

Signature claims that it held three promissory notes at the time it received M&I's

restraining notice on March 5, 2007:  two notes allegedly executed by Ahava on August 22, 2005

and a third note allegedly executed by LCD on January 24, 2007.  Bloch Decl., ¶¶ 6, 10.  On its

face, the first note was in the amount of $2,000,000.  Bloch Decl., Ex. B.  However, it was

subject to a Credit Agreement and under the terms of that Credit Agreement the note was not due

until August 22, 2008.  Bloch Decl., Ex. A at p. 7.  Furthermore, under the terms of the Credit

Agreement the face amount of this note was subject to reduction by, *e.g.*, periodic payments and

---

[1] Section 5222(a) of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") expressly authorizes the service of restraints by certified mail, return receipt requested.

[2] N.Y. C.P.L.R. § 5224(a)(3) likewise authorizes the service of information subpoenas by certified mail, return receipt requested.

1436831.1

prepayments. Bloch Decl., Ex. A at §§ 2A.02(b), 2A.03. Signature's motion papers contain no proof demonstrating the actual amount of outstanding indebtedness on this note as of March 5, 2007, the date Signature received M&I's First Restraining Notice. M&I has requested that information in discovery, but Signature has failed to provide it. Orbach Decl., ¶¶ 29-30.

The second note likewise was not due until August 22, 2008 under the terms of the Credit Agreement. Bloch Decl., Ex. A at § 2B.02(b) and Ex. C. Furthermore, the second note states on its face that it was for the principal sum of $5,500,000 or "*less*," depending on "the then outstanding principal amount loaned by the Bank . . . as Facility B Loans." Bloch Decl., Ex. C (emphasis added). The Credit Agreement defines the Facility B Loans as a revolving credit facility up to a *maximum* $5,500,000, but no minimum amount was required to be loaned and whatever amount was loaned, if any, was subject to prepayments. Bloch Decl., Ex. A at §§ 2B.01, 2B.04. The Credit Agreement further provides that "[t]he date and amount of any Facility B Loan and of each payment, prepayment and readvance of principal thereunder shall be recorded on the grid schedule annexed to the Facility B Note . . .". Bloch Decl., Ex. A at § 2B.02(a). However, Signature's motion papers do not include that "grid schedule" or any proof demonstrating the actual amount of outstanding indebtedness, if any, on this note as of March 5, 2007, and Signature has failed to provide that information in discovery. Orbach Decl., ¶¶ 29-30.

Similarly, the third note was for $750,000 "or such *lesser amount* as may then be the aggregate unpaid principal balance of all loans made by the Bank to the Borrower hereunder . . . as shown on the schedule attached to and made a part of this Note." Bloch Decl., Ex. G (emphasis added). However, Signature's motion papers do not include that "schedule" or any proof demonstrating the actual amount of outstanding indebtedness on this note as of

3

March 5, 2007, and Signature has failed to produce that information in discovery as well. Orbach Decl., ¶¶ 29-30. By its terms, this note was not payable until March 23, 2007. Bloch Decl., Ex. G.

Signature claims that "the funds in the Judgment Debtors' accounts never exceeded the amount of indebtedness owed to the Bank." Bloch Decl., ¶ 2. However, each of the three notes was fully secured and guaranteed by additional parties with accounts at Signature to which Signature had access, including initially St. Lawrence Food Corp. ("SLFC") and Yoni Realty, LLC ("Yoni"), and later Schwartz & Sons Quality Distributors, Inc. ("Schwartz & Sons").[3] Bloch Decl., Exs. A, D & J. In response to M&I's repeated requests, Signature has recently produced partial discovery of the funds available to it in these guarantors' accounts, and those records show that SLFC and Yoni's accounts alone had deposits (excluding intracompany transfers) totaling at least $3,409,542.63 during the Unrestrained Period. Orbach Decl., Exs. 33 & 34.[4]

---

[3] In other proceedings this year, Signature admitted that the Judgment Debtors tried to frustrate M&I's judgment by transferring assets to Schwartz & Sons. Orbach Decl., Ex. 31 at ¶¶ 15-16. Signature knew the Judgment Debtors controlled Schwartz & Sons and that they were funneling funds to Schwartz & Sons "to which [M&I] would otherwise recover." *Id.* at p. 6, n.2. In fact, it appears that as late as February of this year Signature's declarant in this case, Robert Bloch, personally assured Mr. Banayan that these "receivables" funneled to "SSQD" (*i.e.*, Schwartz & Sons Quality Distributors) had been successfully put beyond M&I's reach. Orbach Decl., Ex. 30. Signature stood to gain from those fraudulent conveyances when Schwartz & Sons was suddenly and inexplicably made an additional obligor on all the Judgment Debtors' debts to Signature in August 2007. Bloch Decl., Ex. J.

[4] For purposes of this discussion, this sum also excludes returned checks and the substantial funds that Signature wrongfully allowed the Judgment Debtors to convey to SLFC in violation of M&I's restraining notices. *See* p. 12, *infra.*

1436831.1

### III.    Signature's Admitted Waiver of Its Purported Right to Set Off

Signature claims that M&I's January 12, 2007 judgment against the Judgment

Debtors was an "Event of Default" under its Credit Agreement that entitled it to set off.  Bloch

Decl., ¶¶ 4, 5 & 12.  However, such an "Event of Default" did not automatically accelerate the

amounts due on the three notes.  Instead, Signature was given the right to "declare the Notes . . .

forthwith due and payable."  Bloch Decl., Ex. A at § 7.01, p. 42.[5]  Signature's motion papers do

not claim that it ever declared the indebtedness represented by the three notes to be accelerated

as a result of M&I's judgment.  Nor does Signature claim to have ever set off during the

Unrestrained Period.

E-mail traffic shows that Signature's vice president, Robert Bloch, was personally

discussing M&I's judgment with Mr. Banayan – and possible strategies – at least as early as

March 1, 2007.  Orbach Decl., Ex. 24.  Shortly thereafter, on or about March 8, 2007 (just 3 days

after Signature received M&I's First Restraining Notice), Mr. Bloch sent a letter to the Judgment

Debtors that noted M&I's judgment and asserted a boilerplate reservation of rights, but did *not*

declare an acceleration of any indebtedness and did *not* indicate any intention to set off.  Orbach

Decl., Ex. 25.

On March 28, Banayan sent another e-mail to Mr. Bloch, continuing their

discussion of possible strategies to address M&I's judgment.  In that e-mail, Mr. Banayan made

the following request:  "I would like to work out a temporary agreement for 90 days where by

AFC [Ahava Food Corp.] is given a free hand to decide the best course of action for all

involved."  Orbach Decl., Ex. 26.  In a subsequent e-mail on May 2, 2007, Mr. Bloch assured

---

[5] The third note likewise provided that, upon an Event of Default, "the Bank *may* declare . . . all
loans under this Note to be . . . immediately due and payable."  Bloch Decl., Ex. G at ¶ 8, p. 6
(emphasis added).  *I.e.*, acceleration was not automatic.

1436831.1

Mr. Banayan that "we value you and Ahava as clients and look forward to a continuing

relationship" and that "[t]he forbearance agreement should be issued today." Orbach Decl.,

Ex. 27.

Moreover, in sworn papers filed in another court this year, Signature *admits* that it

made a "decision to not exercise its rights under the loan documents" upon learning of M&I's

judgment against the Judgment Debtors. Orbach Decl., Ex. 31 at ¶ 13. Signature made that

admission in the context of Mr. Banayan's bankruptcy case currently pending in the U.S.

Bankruptcy Court for the Northern District of New York. As Signature told that court:

> On January 12, 2007, a third-party [M&I] obtained a judgment
> against Ahava, LCD and the Debtor in the amount of $658,994.02.
> Ahava, LCD and the Debtor failed notify [sic] Signature of this
> judgment – a condition under the Credit Agreement which results
> in default.
>
> As a result, Signature was entitled to enforce all of its rights and
> remedies under the Credit Agreement and the notes. Signature,
> however, at the request of the Debtor, instead decided to grant the
> Debtor additional credit and forbearance with respect to the
> defaults in exchange for a pledge of additional collateral.

Orbach Decl., Ex. 31 at ¶¶ 11-12.

Indeed, Signature concedes that in lieu of exercising its purported "rights and

remedies" under the Credit Agreement, it documented its forbearance in a Forbearance

Agreement, in which it formally disclaimed any remedies (including set off) it might have had

during the Unrestrained Period, and loaned the Judgment Debtors an additional $1,750,000.

Bloch Decl., ¶¶ 13-19.[6] In the Forbearance Agreement, Signature expressly agreed "not to

exercise any remedies [including set off] under the Loan Documents," despite M&I's two

---

[6] As discussed later, these subsequent loans could not support any set off defense, because under
New York law a bank is not entitled to set off for loans made to judgment debtors after a
restraining notice is served. *See* p. 21, *infra.*

judgments against the Judgment Debtors (which the Forbearance Agreement defined as "Existing Defaults"), until at least September 11, 2007. Bloch Decl., Ex. I at ¶ 5, p. 4 & Schedule 2. Signature ultimately extended its forbearance through at least October 5, 2007. *See* Bloch Decl., ¶ 19 & Ex. O at ¶ 2.

**IV.   Signature's Failure to Timely and Truthfully Respond to M&I's First Information Subpoena**

Signature's answers to M&I's First Information Subpoena were due on March 12, 2007,[7] but Signature failed to respond. On March 13, 2007, Mr. Banayan testified at a post-judgment deposition that Ahava and LCD maintained all, or virtually all, their bank accounts at Signature. Orbach Decl., Ex. 4.[8] Shortly thereafter, on March 27, 2007, M&I's counsel faxed an extra copy of the First Restraining Notice and Information Subpoena to Signature. Orbach Decl., ¶ 7. Signature still did not respond. *Id.*

On April 3, 2007, M&I's counsel faxed another copy of the First Restraining Notice and Information Subpoena to Signature. Orbach Decl., ¶ 8; Bloch Decl., ¶ 24. Finally, Signature faxed answers to M&I's First Information Subpoena to M&I's counsel on April 7, 2007. However, Signature's answers to the First Information Subpoena stated that there were no funds in any of the Judgment Debtors' accounts, thus providing no basis for M&I to initiate an execution or any other enforcement proceedings against those accounts. Orbach Decl., Ex. 7; Bloch Decl., ¶ 24. Signature's answers to the First Information Subpoena also stated that the Judgment Debtors were not indebted to Signature and that Signature did not have a lien on any of the Judgment Debtors' property. Orbach Decl., Ex. 7; Bloch Decl., ¶ 24.

---

[7] N.Y. C.P.L.R. § 5224(a)(3) requires that answers to an information subpoena shall be returned within seven days of receipt.

[8] The monthly bank statements for their Signature accounts that the Judgment Debtors produced to M&I at that deposition all predated March 2007. M&I was dependent on Signature timely and truthfully responding to its information subpoena regarding the Judgment Debtors' accounts.

1436831.1

### V.    M&I's Second Judgment, Restraining Notice and Information Subpoena

M&I obtained a second judgment against the Judgment Debtors, for attorneys'
fees, in the amount of $60,553.66 on April 23, 2007.  Orbach Decl., Ex. 9.

M&I served a Second Restraining Notice, in the amount of the $60,553.66
judgment, on Signature via certified mail, return receipt requested, on May 8, 2007.  Orbach
Decl., ¶ 12.  M&I served a Second Information Subpoena on Signature with that Second
Restraining Notice.  *Id.*  Signature received M&I's Second Restraining Notice and Information
Subpoena on May 14, 2007.  Orbach Decl., ¶ 13.  Signature admits that the same agent signed
for those papers on that date as signed for M&I's First Restraining Notice and Information
Subpoena.  *Id.*

### VI.    Signature's Failure to Respond to M&I's Second Information Subpoena

Signature did not respond to M&I's Second Information Subpoena within seven
days as required by N.Y. C.P.L.R. § 5224(a)(3).  On May 30, 2007, M&I's counsel faxed
Signature a request for immediate response.  Orbach Decl., ¶ 14.  Signature did not respond.
Orbach Decl., ¶ 15.  M&I's counsel faxed Signature again on June 8, 2007.  Orbach Decl., ¶ 15.
Still Signature did not respond.  *Id.*

### VII.    The First Communications with Signature's Counsel

Shortly thereafter, M&I's counsel learned that Andrew Gold, Esq. of the Herrick,
Feinstein LLP firm represented Signature.  Counsel for the two parties spoke by phone on
July 13, 2007.  Orbach Decl., ¶ 16.  Following that call, on July 16, 2007, M&I's counsel
forwarded to Mr. Gold copies of the First and Second Restraining Notices and Information
Subpoenas, and requested that Mr. Gold supply Signature's loan documents with the Judgment
Debtors, as well as complete responses to M&I's information subpoenas.  Orbach Decl., ¶ 16.  In

8

1436831.1

response, Mr. Gold initially produced only Signature's August 22, 2005 Security Agreement with the Judgment Debtors, and related UCC filings. Orbach Decl., ¶ 17. Mr. Gold produced those documents on the afternoon of July 16, 2007. Later that same afternoon, M&I's counsel made a follow-up request to Mr. Gold, asking him to produce, among other things, "*any other debt instruments*." Orbach Decl., ¶ 18. In response, Mr. Gold produced the two notes executed by Ahava on August 22, 2005, the Joint and Several Guaranty of Payment executed on August 22, 2005 by St. Lawrence Food Corp., LCD and Yoni Realty, LLC, and an additional note executed by LCD on March 30, 2006.[9] Orbach Decl., ¶ 19. However, Mr. Gold *never* mentioned or produced the Forbearance Agreement that Signature had recently executed with the Judgment Debtors. Orbach Decl., ¶ 20.[10]

On July 18, 2007, Mr. Gold also represented that "[t]he bank is redoing the responses to the information subpoenas." Orbach Decl., ¶ 21. However, those promised responses never materialized. *Id.*

**VIII.  Signature's Refusal to Comply With M&I's Federal Subpoena Duces Tecum**

Accordingly, on September 10, 2007, M&I issued a subpoena duces tecum to Signature, pursuant to Rules 30(b)(6), 45 and 69 of the Federal Rules of Civil Procedure. Orbach Decl., ¶ 22. That subpoena was returnable on October 4, 2007, and called for Signature to produce a witness for deposition and documents concerning, *inter alia*, whatever agreements and understandings Signature might have had with the Judgment Debtors, and any transfers of

---

[9] Signature's motion papers do not appear to reference, attach or rely upon the March 30, 2006 note that Mr. Gold produced last July.

[10] In fact, Signature never acknowledged its forbearance until after M&I was forced to commence this action, and M&I did not learn of the Forbearance Agreement until after this action commenced.

1436831.1

money in which the Judgment Debtors possessed an interest that Signature had made or

permitted since its receipt of M&I's restraining notices. *Id.*

Signature represented that documents responsive to the subpoena would be

produced by the October 4, 2007 return date. Orbach Decl., ¶ 23. Signature also represented

that its witness was unavailable on October 4, but stated on October 3 that it would provide M&I

with alternative dates on which he would be available to be examined "as soon as possible." *Id.*

At no time prior to October 4, 2007, did Signature indicate that it had any objections to the

subpoena duces tecum. *Id.*

However, on October 4, 2007, Signature served a seven page litany of objections

to the subpoena. Orbach Decl., Ex. 23. Tellingly, among its objections, Signature expressed the

fear that the subpoena was "designed to improperly gather pre-litigation discovery against

Signature in connection with a future separate action regarding its compliance with the

restraining notices . . .". *Id.*

Signature produced just a few documents in response to the subpoena.

Signature's document production consisted of little more than the August 22, 2005 Joint and

Several Guaranty of Payment that Mr. Gold had previously provided, along with what appeared

to be computer printouts showing that several Ahava and LCD accounts at Signature had an

available balance of zero dollars on a single, random date – July 19, 2007 – and a similar printout

showing that one of the accounts also had an available balance of zero dollars on August 24,

2007, another random date. Orbach Decl., ¶ 25 & Ex. 23. Signature provided no explanation for

why it chose to produce account information for just those dates. *Id.* Signature did not produce,

*inter alia*, any monthly account statements or the Forbearance Agreement and amendments

thereto that Signature now admits it had executed. *Id.* Moreover, Signature never supplied the

1436831.1

promised dates on which it would be willing to produce a witness for deposition.  Orbach Decl.,

¶ 25.

IX.    **Signature's Post-Suit Admissions Regarding Its Violations of M&I's
Restraining Notices**

Signature now admits that, despite having received M&I's First Restraining

Notice on March 5, 2007, it did not restrain any of the Judgment Debtors' accounts until May 23,

2007.  Bloch Decl.,  ¶¶ 23 & 26.  Furthermore, the bank records attached to Signature's motion

papers clearly show that from the time it received M&I's First Restraining Notice on March 5,

2007 through May 13, 2007, Signature allowed the Judgment Debtors to disperse no less than

$5,877,499.13 from their accounts, far more than enough to cover M&I's first judgment against

the Judgment Debtors, in the amount of $658,994.02, that was the subject of its First Restraining

Notice.  Bloch Decl., Ex. P.  Signature's records also show that from the time it received M&I's

Second Restraining Notice on May 14, 2007 through May 23, 2007, Signature allowed the

Judgment Debtors to disperse no less than $763,657.91 from their accounts, more than enough to

satisfy M&I's second judgment against the Judgment Debtors, in the amount of $60,553.66, that

was the subject of its Second Restraining Notice.  The relevant disbursements from the Judgment

Debtors' accounts, as established by the records attached at Bloch Decl., Ex. P, are summarized

in **Appendix 1** to this memorandum.

Although Signature asserts an affirmative defense based on its purported "right to

set off," Signature does not claim to have exercised any purported "right to set off" during the

Unrestrained Period.  *See* Bloch Decl., ¶ 27.  In fact, Signature never declared the Judgment

Debtors' debts due and payable, or indicated any intention to exercise its alleged rights and

remedies under its loan agreements with the Judgment Debtors, until it issued a demand letter to

11

the Judgment Debtors on December 14, 2007 – over nine months after it received M&I's First
Restraining Notice.  Orbach Decl., Ex. 29.

Among the disbursements Signature permitted during the Unrestrained Period in
violation of M&I's restraining notices were numerous transfers to St. Lawrence Food Corp.'s
accounts numbers '3416, '3630 and '3785[11] maintained at Signature.  Bloch Decl., Ex. P; Orbach
Decl., Exs. 32 & 33.  Indeed, on May 22, 2007 alone – the day before Signature claims it finally
restrained the Judgment Debtors' accounts – the Judgment Debtors transferred over $150,000
from Ahava operating account number '2660 to two of these SLFC accounts.  Bloch Decl.,
Ex. P.  And even though Signature claims to have restrained the Judgment Debtors' accounts on
May 23, it still permitted a $59,670.93 telephone transfer that day from the same Ahava
operating account to the third SLFC account.  *Id.*  Signature knew that Banayan controlled SLFC
just as he controlled Ahava and LCD, *see* Bloch Decl., Ex. K at p. 11, and Signature also knew
that M&I did not have a judgment against SLFC.  Signature plainly stood to gain from the
Judgment Debtors' transfers of funds to SLFC's accounts in violation of M&I's restraining
notices and beyond the reach of M&I's judgments.  First, SLFC was a guarantor liable for all of
the Judgment Debtors' debts to Signature.  Bloch Decl., Exs. A & D.  Second, Mr. Banayan
pledged his 100% ownership interest in SLFC to Signature in purported "consideration" of
Signature's forbearance.  Bloch Decl., Ex. K.

---

[11] Pursuant to Fed. R. Civ. P. 5.2(a), reference is made to only the last four digits of each account
number.

1436831.1

## ARGUMENT

I.     **Overview:  Restraining Notices and Information Subpoenas Under N.Y. C.P.L.R. § 5222**

"The New York civil enforcement procedures found in Article 52 of the New

York Civil Practice Law and Rules are often invoked by judgment creditors to secure property in

aid of the enforcement of federal judgments." *U.S. v. Haney*, 2008 U.S. Dist. LEXIS 44223, at

*6 (E.D.N.Y. June 4, 2008).[12]  One of those enforcement procedures is the service of a

restraining notice.  N.Y. C.P.L.R. § 5222.

Once served with a restraining notice, a third party holding property in which the

judgment debtor has an interest "is forbidden to make or suffer any sale, assignment or transfer

of, or any interference with, any such property . . . to any person other than the sheriff or the

support collection unit, except upon direction of the sheriff or pursuant to an order of the court,

until the expiration of one year after the notice is served upon him or her, or until the judgment

or order is satisfied or vacated, whichever event first occurs."  N.Y. C.P.L.R. § 5222(b).  The

restraining notice applies to "[a]ll property in which the judgment debtor . . . is known or

believed to have an interest then in and thereafter coming into the possession or custody" of the

third party on whom it was served.  N.Y. C.P.L.R. § 5222(b).

"The restraining notice is not a mere notice but a form of process issued out of

court intended to have the effect of an injunction."  *Sumitomo Shoji New York, Inc. v. Chemical

Bank New York Trust Co.*, 47 Misc. 2d 741, 746, 263 N.Y.S.2d 354, 360 (Sup. Ct., N.Y. Co.

1965).  "'The restraining notice may . . . be used independently of other enforcement devices, to

---

[12] Under Fed. R. Civ. P. 69(a), it was proper for M&I to utilize the information subpoenas and
restraining notices authorized by New York law in aid of its federal judgments. *See generally*
*Blue v. Cablevision Systems, New York City Corp.*, 2006 U.S. Dist. LEXIS 96449, at *4 n.1
(E.D.N.Y. July 5, 2007).

1436831.1

prohibit the judgment debtor from disposing of assets, thereby encouraging him to satisfy the judgment. . . . [o]r, the restraining notice may be used in conjunction with other enforcement devices, to maintain the status quo while the judgment creditor seeks a delivery, turnover, or receivership order in what were formerly called supplementary proceedings.'" *U.S. v. Haney*, 2008 U.S. Dist. LEXIS 44223, at *7 (quoting *Plaza Hotel Assocs. v. Wellington Assocs., Inc.*, 84 Misc. 2d 777, 780, 378 N.Y.S.2d 859, 863 (Sup. Ct., N.Y. Co. 1975)).

In addition, Article 52 provides for disclosure of "all matter relevant to the satisfaction of the judgment" via service of an information subpoena on any person. N.Y. C.P.L.R. §§ 5223, 5224(a)(3).

**II.     As a Matter of Law, Signature Cannot Mount an Affirmative Defense Based on a Purported Right to Set Off That It Admits It Did Not Exercise; M&I is Entitled to Summary Judgment**

Signature neither honored M&I's restraining notices nor exercised any purported right to set off during the Unrestrained Period. Signature has not cited any New York case absolving a bank from liability where, as here, the bank neither restrained the subject accounts nor set off, but instead let the judgment debtors freely disperse their assets in plain violation of the bank's statutory obligation under N.Y. C.P.L.R. § 5222(b).

Signature's reliance on Section 151 of the Debtor and Creditor Law is misplaced. That statute gives banks and other garnishees a right to set off which may be exercised when a judgment creditor has initiated enforcement of a judgment. N.Y. Debtor & Creditor L. § 151. Section 151 does *not* give a bank *carte blanche* to ignore restraining notices and permit a judgment debtor to freely dispose of the assets in its accounts simply because the bank might have a right to set off that it does not exercise. The plain terms of Section 151 contain no such grant of immunity to a garnishee that does not exercise the right to set off the statute provides. A

14

right to set off extends only to preexisting obligations and does *not* permit a bank to dispense

funds to the judgment debtor, or for his benefit, from the restrained account once a restraining

notice is received. *See Kates v. Marine Midland Bank, N.A.*, 143 Misc. 2d 721, 725-26, 541

N.Y.S.2d 925, 929 (Sup. Ct. Monroe Co. 1989). "[A] bank . . . is forbidden under CPLR 5222 to

honor withdrawals from an account specified in a restraining notice, except pursuant to court

order." *Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 47 Misc. 2d 741,

745, 263 N.Y.S.2d 354, 358 (Sup. Ct., N.Y. Co. 1965). A restraint may only be vacated "upon a

proper showing by application to the court," *id.* at 745, 359, and Signature never moved to vacate

M&I's restrainers.

Moreover, the right to set off afforded by Section 151 can be waived, *Banque*

*Arabe Et Internationale D'Investissement v. Bulk Oil (USA) Inc.*, 726 F. Supp. 1411, 1423

(S.D.N.Y. 1989), just as a bank can waive the security interest granted to it under a promissory

note and security agreement, *National Bank of Northern New York v. Shaad,* 60 A.D.2d 774,

775, 400 N.Y.S.2d 965, 967 (App. Div., 4th Dep't 1977). Furthermore, the Second Circuit,

applying New York law, held that a bank's continuing lien and right to set off under a

promissory note and Section 151 did not make it the owner of funds in a customer's account, and

that all the funds in the customer's account remained the customer's property "[u]ntil the bank

acted to restrict his right to draw on the funds." *U.S. v. Sterling National Bank & Trust Co. of*

*New York*, 494 F.2d 919, 922 (2d Cir. 1974). A bank that allows a judgment debtor to disperse

funds from its accounts after a restraining notice is served has certainly waived its security

interest and right to set off as to those funds. In addition, Signature admits that it decided not to

set off and executed a Forbearance Agreement in which it expressly disclaimed *any* remedies –

1436831.1

including set off – that it might have had during the Unrestrained Period.  Bloch Decl., ¶ 13 &
Ex. I at ¶ 5.

The case on which Signature principally relies, *Aspen Industries, Inc. v. Marine
Midland Bank*, 52 N.Y.2d 575, 439 N.Y.S.2d 316 (1981), is plainly distinguishable.  Although
the garnishee bank in *Aspen* allowed the judgment debtor to disburse funds from the subject
account after the restraining notice was served, at no time while the restraining notice was in
effect did the bank allow the balance in the account to drop below twice the amount then owing
on the judgment.  *Id.* at 581.  Thus, the bank complied with N.Y. C.P.L.R. § 5222(b), which
provides that "[i]f a garnishee served with a restraining notice withholds the payment of money
belonging or owed to the judgment debtor in an amount equal to twice the amount due on the
judgment, the restraining notice is not effective as to other property or money."  Unremarkably,
the *Aspen* court found "this provision of CPLR 5222 to be dispositive of the present appeal."
*Aspen*, 52 N.Y.2d at 581.[13]  Moreover, the garnishee bank in the *Aspen* case *exercised* its Section
151 right to set off.  *Id.* at 578.  The *Aspen* bank's compliance with N.Y. C.P.L.R. § 5222(d) and
exercise of its Section 151 right to set off stands in stark contrast to what Signature admits it did
during the Unrestrained Period -- allowing the judgment debtors to disperse funds from their
accounts for two and a half months wholly unrestrained, without ever exercising its alleged right
to take those funds as set off *or* restraining those funds up to twice the amount of M&I's
judgment, which were the only two lawful options it might have had.

---

[13] Signature cannot avail itself of this safe harbor because at no time during the Unrestrained
Period did the subject accounts contain twice the amount of M&I's judgment.  *See* Bloch Decl.
Ex. P.  "CPLR 5222 . . . prohibits the use of funds up until that amount, absent a court order."
*City of New York v. Birch*, 124 Misc. 2d 984, 986, 478 N.Y.S.2d 231, 233 (Sup. Ct., N.Y. Co.
1984).

16

By Signature's own account, the Judgment Debtors' funds on deposit would not have covered their alleged debts to Signature. *See* Bloch Decl., ¶ 20. Thus, Signature plainly concluded that setting off against the Judgment Debtors' accounts was not in its interest, and that its chance of recovering the full $8.25 million it claims to have loaned to Ahava and LCD was better if it allowed them, Mr. Banayan and his other businesses to continue operating unrestricted as long as possible. In fact, Signature's appraisers concluded that Ahava's value as a going concern was nearly *four times more* than its forced liquidation value. Orbach Decl., Ex. 28.

Indeed, Signature's failure to honor M&I's restraining notices may have been part of, or at least contributed to, a broader scheme to facilitate the Judgment Debtors' evasion of M&I's judgment via fraudulent conveyances to Mr. Banayan's other companies, like St. Lawrence Food Corp. and/or Schwartz & Sons, in order to keep Mr. Banayan (who apparently was personally liable on all debts to Signature) in business – a prospect Signature plainly deemed more profitable in the long run than exercising any purported right of offset. If Signature *had* exercised its right to set off during the Unrestrained Period, M&I's restrainers would have continued to apply to any new balances, *see* N.Y. C.P.L.R. § 5222(b), requiring the Judgment Debtors to open accounts at a different bank (over which Signature would have no control or ability to monitor) or else go out of business, and Signature's words and conduct very clearly indicated its intention to *keep* Mr. Banayan in business as the only way it could continue to be his banker, keep "control" over his accounts, and hope to some day recoup the millions it had loaned.

Whatever Signature's motivations were, the fact remains that Signature did not set off during the Unrestrained Period and has no defense to its plain violation of M&I's restraining notices during that time. Violation of a restraining notice by the party served subjects that

17

garnishee to personal liability in a separate plenary action under New York law.  *See, e.g., Aspen*, 52 N.Y.2d at 580, 439 N.Y.S.2d at 319.  Intent to violate the restraining notice need not be shown; negligent failure to honor the restrainer establishes liability.  *Accounts Receivable Solutions, Inc. v. Tompkins Trustco, Inc.*, 45 A.D.3d 612, 613, 846 N.Y.S.2d 272, 273 (App. Div., 2d Dep't 2007); *Mazzuka v. Bank of North America*, 53 Misc. 2d 1053, 1056, 280 N.Y.S.2d 495, 499 (Civ. Ct., Queens Co. 1967).  Indeed, a bank's failure to honor a restraining notice amounts to its breach of a statutory duty owed to the judgment creditor, *Mazzuka*, 53 Misc. 2d at 1056, 280 N.Y.S.2d at 499, and as a general rule under New York law, such breach of an express statutory duty results in absolute liability or, at a minimum, negligence *per se*.  *See, e.g., Van Gaasbeck v. Webatuck Cent. Sch. Dist. No. 1*, 21 N.Y.2d 239, 287 N.Y.S.2d 77 (1967). Damages are measured by the amount of funds wrongly released to the judgment debtors, or for their benefit, up to the amount of the judgment remaining unsatisfied, subject only to certain limitations not applicable here that exempt certain types of personal property from application to the satisfaction of money judgments.  *See, e.g., Kates*, 143 Misc. 2d at 725-26, 541 N.Y.S.2d at 929; *Nardone v. Long Island Trust Co.*, 40 A.D.2d 697, 697, 336 N.Y.S.2d 325, 327 (App. Div., 2d Dep't 1972).  Here, Signature's own account records show that Signature released no less than $6,641,157.04 to the judgment debtors, or on their behalf, during the Unrestrained Period, more than enough to have satisfied M&I's judgments.  Appendix 1; Bloch Decl., Ex. P.  As discussed above, Signature plainly waived any security interest and right to set off it might have had with respect to those funds.  Thus, M&I is entitled to summary judgment against Signature for the full amount of its judgments, *i.e.*, $719,547.68.

18

### III. Alternatively, Questions of Fact Preclude Signature's Motion for Summary Judgment on its Affirmative Defense

Even assuming, *arguendo*, that Signature could somehow mount an affirmative defense based on a purported right to set off that it (1) did not exercise, (2) admittedly decided to forego and (3) expressly disclaimed in a Forbearance Agreement, Signature would not be entitled to summary judgment on that affirmative defense.

First of all, Signature does not and cannot show that it would be entitled to a directed verdict at trial, which is the standard it must meet to establish even a *prima facie* case for summary judgment on its affirmative defense. "As to issues with respect to which the moving party would bear the burden of proof at trial, the motion must be supported by credible evidence 'that would entitle it to a directed verdict if not controverted at trial.'" *Kinstler v. First Reliance Standard Life Ins. Co.*, 1997 U.S. Dist. LEXIS 10284, at *11 (S.D.N.Y. July 16, 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)). Signature would plainly have the burden to prove its affirmative defense at trial. *See, e.g., Overall v. Estate of L.H.P. Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (holding that defendant bears the burden of proof on affirmative defenses); *see also Tiger Security Group, Inc. v. New York*, 2007 N.Y. Misc. LEXIS 7654, at *15 (Ct. Cl. Sept. 25, 2007) ("Defendant bears the burden of proof on any affirmative defense, *rights to set-off*, or counterclaims asserted by it.") (emphasis added); *EBER-NDC, LLC v. Star Indus., Inc.*, 42 A.D.3d 873, 876, 839 N.Y.S.2d 650, 653 (App. Div., 4th Dep't 2007) (set off is an affirmative defense); *American Oil Co. v. Coughlin*, 261 A.D. 852, 852, 24 N.Y.S.2d 731, 732 (App. Div. 3d Dep't 1941) (defendant has burden to prove its right to set off). "Thus, [Signature] must show that [it] would be entitled to a directed verdict to prevail on [its] motion." *Kinstler*, 1997 U.S. Dist. LEXIS 10284, at *12.

19

Signature submits the self-serving and speculative declaration of its vice

president, Robert Bloch, to *imply* that *if* Signature had restrained the accounts and not frustrated

M&I's ability to execute, then Signature *would* have exercised its right to set off if an execution

had been served. Such speculation is not admissible on a summary judgment motion or at trial.

*See, e.g., Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (party resisting motion

for summary judgment may not rely on mere allegations, speculation and denial). But even if

such speculative testimony was admissible at trial, it would not entitle Signature to a directed

verdict. The Court sitting as the trier of fact in this non-jury case would be free to disregard

Bloch's testimony as incredible, and "on summary judgment it is not the Court's function to

evaluate the credibility of the parties." *Arias-Zeballos v. Tan*, 2008 U.S. Dist. LEXIS 25852, at

*20 (S.D.N.Y. Mar. 28, 2008) (Lynch, J.). Thus, Bloch's affidavit would not entitle Signature to

summary judgment on its affirmative defense. *See id.* at *20.

Moreover, Bloch's affidavit never actually *says* that Signature would have

exercised its alleged right to set off during the Unrestrained Period under *any* circumstances, and

Signature plainly *waived* any right to set off it might have had during that period. *See* Point II,

*supra*. Alternatively, at a bare minimum, the record developed to date creates a serious question

of fact as to whether Signature waived any right to set off it may have had during that time. *See*

*Banque Arabe Et Internationale D'Investissement v. Bulk Oil (USA) Inc.*, 726 F. Supp. 1411,

1423 (S.D.N.Y. 1989) (question of fact as to whether right to set off under New York Debtor and

Creditor Law § 151 was waived precluded defendant's summary judgment motion); *see also*

*National Bank of Northern New York v. Shaad,* 60 A.D.2d 774, 775, 400 N.Y.S.2d 965, 967

(App. Div., 4th Dep't 1977) (bank's conduct and statements after the execution of promissory

notes and security agreements presented questions of fact for trial as to whether bank waived its

1436831.1

rights under those agreements, including the security interests provided by those agreements, notwithstanding bank's duly filed UCC financing statements). Under New York law, "[a] party may waive a right if it dispenses with performance of something it had the right to demand or insist upon and does so with both knowledge of its existence and an intention to relinquish it." *Tiger Security Group, Inc. v. New York*, 2007 N.Y. Misc. LEXIS 7654, at *8 (Ct. Cl. Sept. 25, 2007) (citations and internal quotation marks omitted). "Waiver is a matter of intent that can be demonstrated by words or conduct." *Id.* Surely, Signature's words *and* conduct establish that it waived any right to set off it might have had during the Unrestrained Period as a matter of law, or at least create a question of fact requiring further discovery and ultimately a trial. *See* pp. 5-7 & 11-12, *supra.*

Other questions of fact would also preclude summary judgment for Signature. There is a question as to the amount of Signature's purported right to set off. Under New York law, a bank's right to set off, if any, extends only to obligations that preexist the restraining notice. *Kates v. Marine Midland Bank, N.A.*, 143 Misc. 2d 721, 725, 541 N.Y.S.2d 925, 929 (Sup. Ct. Monroe Co. 1989). A bank is not entitled to set off for advances made to the judgment debtors, or on their behalf, after the restraining notice is served. *Id.* Nor is there any right to set off for contingent liabilities. *Trojan Hardware Co., Inc. v. Bonacquisti Constr. Corp.*, 141 A.D.2d 278, 281-82, 534 N.Y.S.2d 789, 791 (App. Div., 3d Dep't 1988). Yet, Signature has not submitted any proof demonstrating the actual amount of outstanding indebtedness owed to it by the Judgment Debtors as of March 5, 2007, the date it received M&I's First Restraining Notice. *See* pp. 2-4, *supra.*

There are also questions of fact as to the amount of funds that were available to satisfy the preexisting obligation allegedly owed to Signature. First, Signature admits that the

21

Judgment Debtors' debts to it were fully secured and guaranteed by additional parties with accounts at Signature, including St. Lawrence Food Corp. and Yoni Realty, LLC, and those accounts had substantial deposits upon which Signature could have exercised its purported right to set off. *See* p. 4, *supra*. Second, Signature's claim that only $5,432,284.84 was deposited in the Judgment Debtors' accounts between March 5, 2007 and November 15, 2007 is contradicted by the bank records attached to its motion. For example, Signature claims that there were no deposits into Ahava account number '3394 or LCD accounts numbers '3408, '3750 and '3769, *see* Bloch Decl., Ex. Q, but Signature's own records show there were multiple deposits into each of those accounts, *see* Bloch Decl., Ex. P. Excluding loan advances, returned checks, miscellaneous credits, intracompany transfers and transfers from one Judgment Debtor to another, Signature's records show that no less than $6,627,698.14 was deposited into the Judgment Debtors' accounts during the Unrestrained Period alone. *Id.*

M&I has sought discovery pertinent to all of these issues, but Signature has refused to provide fair discovery. Orbach Decl., ¶¶ 28-40. Signature's attempt to gain summary judgment by avoiding discovery must fail. "It is well-established . . . that summary judgment motions prior to discovery are disfavored. 'Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery.'" *GMA Accessories, Inc. v. Croscill, Inc.*, 2007 U.S. Dist. LEXIS 17589, at *2 (S.D.N.Y. Mar. 13, 2007) (Lynch, J.) (quoting *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)). Signature has not sought additional discovery in this case, but M&I has. Thus, if M&I's cross-motion for summary judgment is not granted, then M&I should be allowed to proceed with the discovery it has requested without further delay by Signature.

**IV.     Signature's Defense That "M&I Failed to Enforce Its Judgment" Is Meritless**

Signature's assertion that "M&I failed to enforce its judgment" is beyond the pale. M&I promptly served restraining notices and information subpoenas on Signature following entry of each of its judgments. The restraining notices were issued by M&I's attorneys as officers of the court; they had the force of an injunction under New York law, *see, e.g., Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 47 Misc. 2d 741, 746, 263 N.Y.S.2d 354, 360 (Sup. Ct., N.Y. Co. 1965), and M&I had every right to trust they would be honored.

Signature has not cited any authority to support its further suggestion that execution is a prerequisite to suit for violation of a restraining notice, and M&I has found no authority for that illogical proposition. Indeed, Signature's failure to honor M&I's restraints -- and its refusal to timely and truthfully respond to M&I's accompanying information subpoenas – plainly frustrated M&I's ability to execute.

Moreover, New York law clearly recognizes that "'[t]he restraining notice may . . . be used independently of other enforcement devices, to prohibit the judgment debtor from disposing of assets, thereby encouraging him to satisfy the judgment." *U.S. v. Haney*, 2008 U.S. Dist. LEXIS 44223, at *7 (quoting *Plaza Hotel Assocs. v. Wellington Assocs., Inc.*, 84 Misc. 2d 777, 780, 378 N.Y.S.2d 859, 863 (Sup. Ct., N.Y. Co. 1975)). In this case, Signature permitted several millions of dollars to flow through the Judgment Debtors' operating and payroll accounts during the Unrestrained Period, far more than enough to satisfy M&I's judgments. If Signature had complied with its statutory duty to freeze the Judgment Debtors' operating and payroll accounts upon receipt of M&I's restraints, that plainly would have

1436831.1

"encouraged" the Judgment Debtors to satisfy M&I's judgments so that they could continue their operations and make payroll.

Accordingly, New York recognizes restraining notices to be independent enforcement devices, *Haney*, 2008 U.S. Dist. LEXIS 44223, at *7, gives them the force of an injunction, *Sumitomo*, 47 Misc. 2d at 746, 263 N.Y.S.2d at 360, and holds that "violation of the restraining notice by the party served . . . subjects the garnishee to personal liability in a separate plenary action . . . brought by the aggrieved judgment creditor," *Aspen*, 52 N.Y.2d 575 at 580, 439 N.Y.S.2d at 319. Judgment creditors are not required to engage in futile executions when their restraints are disobeyed before commencing such a plenary action. To prevail, the aggrieved judgment creditor need only "demonstrate that property of the judgment debtor was available to satisfy the judgment at the time the restraining notice was in effect." *Aspen*, 52 N.Y.2d at 581, 439 N.Y.S.2d at 320.

M&I has plainly made that required showing. The record clearly demonstrates that the Judgment Debtors' accounts contained more than adequate funds to satisfy M&I's judgments during the Unrestrained Period, a time when M&I's restraining notices were in effect. Moreover, during the Unrestrained Period, when Signature took no action to restrict the Judgment Debtors' use of their accounts, the funds in those accounts plainly remained the Judgment Debtors' property. *U.S. v. Sterling National Bank & Trust Co. of New York*, 494 F.2d 919, 922 (2d Cir. 1974).[14] Thus, M&I has clearly demonstrated with respect to each of its

---

[14] Alternatively, the deposited funds were a "debt" Signature owed to the Judgment Debtors, *see Aspen*, 52 N.Y.2d at 581, note *, 439 N.Y.S.2d at 320 ("a bank is a debtor of its depositor"). Whether the funds are characterized as the Judgment Debtors' property or a debt owed to them is immaterial, since a restraining notice applies to any debts owed to the judgment debtor by the garnishee, as well as to any property in the garnishee's possession in which the judgment debtor has an interest. N.Y. C.P.L.R. §§ 105(i), 5222(b); *see also Aspen*, 52 N.Y.2d at 579, 439 N.Y.S.2d at 318.

judgments and restraining notices that "property of the judgment debtor[s] was available to satisfy the judgment at the time the restraining notice was in effect." *Aspen*, 52 N.Y.2d at 581, 439 N.Y.S.2d at 320. Since Signature plainly waived any security interest and right to set off it might have had with respect to the wrongly released funds, *see* Point II, *supra,* M&I is entitled to summary judgment against Signature for the full amount of its judgments. Alternatively, there is at least a serious question of fact as to whether Signature waived its purported right to set off during that time that precludes Signature's summary judgment motion on that affirmative defense and requires further discovery. *See* Point III, *supra.*

## CONCLUSION

For the reasons stated above, Signature's motion for summary judgment should be denied. M&I's cross-motion for summary judgment in the amount of $719,547.68 should be granted, or, in the alternative, M&I should be allowed to obtain the further discovery it has requested of Signature.

Dated: July 14, 2008

BOND, SCHOENECK & KING, PLLC

By:

Louis Orbach (LO 9611)
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

Attorneys for Plaintiff

25

1436831.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, I electronically filed the foregoing Plaintiff M&I Equipment Finance Company's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Mara B. Levin, Esq.
Herrick, Feinstein LLP
Two Park Avenue
New York, NY 10016-9301
E-mail:  mlevin@herrick.com


Louis Orbach

# APPENDIX 1

**FUNDS WRONGFULLY RELEASED FROM JUDGMENT DEBTORS'**
**SIGNATURE BANK ACCOUNTS**
**3/5/07 - 5/23/07**

| Account Name/No. | Time Period | Withdrawals and Electronic Transfers to Third Parties* | Checks Honored | Total Money Out For Time Period |
|---|---|---|---|---|
| Ahava #'3386 | 3/5/07 - 3/31/07 | $0.00 | $0.00 | $0.00 |
| | 4/1/07 - 4/30/07 | $0.00 | $0.00 | $0.00 |
| Operating Acct. | 5/1/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07-5/13/07 | $0.00 | $0.00 | $0.00 |
| | 5/14/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07-5/23/07 | $0.00 | $0.00 | $0.00 |
| Ahava #'2660 | 3/5/07 - 3/31/07 | $1,400,085.78 | $1,029,511.03 | $2,429,596.81 |
| | 4/1/07 - 4/30/07 | $1,210,328.69 | $414,527.63 | $1,624,856.32 |
| Operating Acct. | 5/1/07 - 5/13/07 | $800,881.74 | $71,281.99 | $872,163.73 |
| | Totals 3/5/07-5/13/07 | $3,411,296.21 | $1,515,320.65 | $4,926,616.86 |
| | 5/14/07 - 5/23/07 | $718,353.95 | $31,490.32 | $749,844.27 |
| | Totals 3/5/07-5/23/07 | $4,129,650.16 | $1,546,810.97 | $5,676,461.13 |
| Ahava #'3394 | 3/5/07 - 3/31/07 | $20,390.15 | $58,855.38 | $79,245.53 |
| | 4/1/07 - 4/30/07 | $0.00 | $1,513.29 | $1,513.29 |
| Payroll Acct. | 5/1/07 - 5/13/07 | $10,157.06 | $28,655.74 | $38,812.80 |
| | Totals 3/5/07-5/13/07 | $30,547.21 | $89,024.41 | $119,571.62 |
| | 5/14/07 - 5/23/07 | $0.00 | $1,354.67 | $1,354.67 |
| | Totals 3/5/07 - 5/23/07 | $30,547.21 | $90,379.08 | $120,926.29 |

*Payments to Signature Bank and
transfers between the Judgment Debtors'
own accounts have been excluded.

1

1436831.1

**FUNDS WRONGFULLY RELEASED FROM JUDGMENT DEBTORS'**
**SIGNATURE BANK ACCOUNTS**
**3/5/07 - 5/23/07**

| Account Name/No. | Time Period | Withdrawals and Electronic Transfers to Third Parties* | Checks Honored | Total Money Out For Time Period |
|---|---|---|---|---|
| Ahava #'3622 | 3/5/07 - 3/31/07 | $38.44 | $0.00 | $38.44 |
| | 4/1/07 - 4/30/07 | $0.00 | $0.00 | $0.00 |
| Operating Acct. | 5/1/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07 - 5/13/07 | $38.44 | $0.00 | $38.44 |
| | 5/14/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07 - 5/23/07 | $38.44 | $0.00 | $38.44 |
| LCDC #'3408 | 3/5/07 - 3/31/07 | $34,106.66 | $70,799.57 | $104,906.23 |
| | 4/1/07 - 4/30/07 | $13,422.69 | $45,395.04 | $58,817.73 |
| Payroll Acct. | 5/1/07 - 5/13/07 | $7,563.92 | $8,508.53 | $16,072.45 |
| | Totals 3/5/07 - 5/13/07 | $55,093.27 | $124,703.14 | $179,796.41 |
| | 5/14/07 - 5/23/07 | $7,802.29 | $0.00 | $7,802.29 |
| | Totals 3/5/07 - 5/23/07 | $62,895.56 | $124,703.14 | $187,598.70 |
| LCDC #'3750 | 3/5/07 - 3/31/07 | $17,621.82 | $331,874.02 | $349,495.84 |
| | 4/1/07 - 4/30/07 | $0.00 | $57,367.58 | $57,367.58 |
| Operating Acct. | 5/1/07 - 5/13/07 | $0.00 | $31,884.06 | $31,884.06 |
| | Totals 3/5/07 - 5/13/07 | $17,621.82 | $421,125.66 | $438,747.48 |
| | 5/14/07 - 5/23/07 | $0.00 | $3,648.00 | $3,648.00 |
| | Totals 3/5/07 - 5/23/07 | $17,621.82 | $424,773.66 | $442,395.48 |

*Payments to Signature Bank and transfers between the Judgment Debtors' own accounts have been excluded.

2

1436831.1

**FUNDS WRONGFULLY RELEASED FROM JUDGMENT DEBTORS'**
**SIGNATURE BANK ACCOUNTS**
**3/5/07 - 5/23/07**

| Account Name/No. | Time Period | Withdrawals and Electronic Transfers to Third Parties* | Checks Honored | Total Money Out For Time Period |
|---|---|---|---|---|
| | | | | |
| LCDC #'3769 | 3/5/07 - 3/31/07 | $1,008.68 | $162,377.90 | $163,386.58 |
| | 4/1/07 - 4/30/07 | $1,008.68 | $31,749.53 | $32,758.21 |
| SLF | 5/1/07 - 5/13/07 | $0.00 | $16,545.09 | $16,545.09 |
| | Totals 3/5/07 - 5/13/07 | $2,017.36 | $210,672.52 | $212,689.88 |
| | | | | |
| | 5/14/07 - 5/23/07 | $1,008.68 | $0.00 | $1,008.68 |
| | | | | |
| | Totals 3/5/07 - 5/23/07 | $3,026.04 | $210,672.52 | $213,698.56 |
| | | | | |
| LCDC #'6980 | 3/5/07 - 3/31/07 | $0.00 | $0.00 | $0.00 |
| | 4/1/07 - 4/30/07 | $0.00 | $0.00 | $0.00 |
| | 5/1/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| | 5/14/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| | Totals 3/5/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| LCDC #'3649 | 3/5/07 - 3/31/07 | $38.44 | $0.00 | $38.44 |
| | 4/1/07 - 4/30/07 | $0.00 | $0.00 | $0.00 |
| Operating Acct. | 5/1/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07 - 5/13/07 | $38.44 | $0.00 | $38.44 |
| | | | | |
| | 5/14/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| | Totals 3/5/07 - 5/23/07 | $38.44 | $0.00 | $38.44 |

*Payments to Signature Bank and
transfers between the Judgment Debtors'
own accounts have been excluded.

3

1436831.1

**FUNDS WRONGFULLY RELEASED FROM JUDGMENT DEBTORS'**
**SIGNATURE BANK ACCOUNTS**
**3/5/07 - 5/23/07**

| Account Name/No. | Time Period | Withdrawals and Electronic Transfers to Third Parties* | Checks Honored | Total Money Out For Time Period |
|---|---|---|---|---|
| | | | | |
| Banayan #'3645 | 3/5/07 - 3/31/07 | $0.00 | $0.00 | $0.00 |
| | 4/1/07 - 4/30/07 | $0.00 | $0.00 | $0.00 |
| | 5/1/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | Totals 3/5/07 - 5/13/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| | 5/14/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| | Totals 3/5/07 - 5/23/07 | $0.00 | $0.00 | $0.00 |
| | | | | |
| **TOTALS 3/5/07 - 5/13/07 ALL ACCOUNTS** | | $3,516,652.75 | $2,360,846.38 | $5,877,499.13 |
| **TOTALS 5/14/07 - 5/23/07 ALL ACCOUNTS** | | $727,164.92 | $36,492.99 | $763,657.91 |
| **TOTALS 3/5/07 - 5/23/07 ALL ACCOUNTS** | | $4,243,817.67 | $2,397,339.37 | $6,641,157.04 |
| | | | | |

*Payments to Signature Bank and
transfers between the Judgment Debtors'
own accounts have been excluded.

4

1436831.1