Mara B. Levin, Esq.
Marni E. Weiss, Esq.
HERRICK, FEINSTEIN LLP
Attorneys for Defendant Signature Bank
2 Park Avenue
New York, New York 10016
Tel. 212.592.1400
Fax. 212.592.1500
mlevin@herrick.com

**ELECTRONICALLY FILED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                              :

M&I EQUIPMENT FINANCE COMPANY,    :

              Plaintiff,      :

    -against-       :   08 CV 02164 (GEL) (GWG)

                              :

SIGNATURE BANK,                :

             Defendant.    :
-------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL COUNTER-STATEMENT ........................................................................ 1

ARGUMENT ............................................................................................................... 3

POINT I  SIGNATURE AT ALL TIMES HAD A PERFECTED
SECURITY INTEREST IN THE FUNDS .................................................................... 3

POINT II  SIGANTURE DID NOT WAIVE ITS SECURITY INTEREST
IN THE FUNDS ........................................................................................................... 4

POINT III BECAUSE M&I DID NOT SUFFER ANY DAMAGE AS A
RESULT OF SIGNATURE'S FAILURE TO HONOR THE
FIRST RESTRAINING NOTICE M&I'S CLAIMS FAIL
AS A MATTER OF LAW .......................................................................................... 10

POINT IV M&I IS NOT ENTITLED TO FURTHER DISCOVERY ......................... 15

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Banque Arabe v. Bulk Oil (USA), Inc., 726 F. Supp. 1411 (S.D.N.Y. 1989) ................................6

Beauvais v. Allegiance Secs., Inc., 942 F.2d 838 (2d Cir. 1991) ..................................................11

In re Braten Apparel Corp., 68 B.R. 955 (Bankr. S.D.N.Y. 1987) ................................................6

Holtz v. Rockefeller & Co., 258 F.3d 62 (2d Cir. 2001) ..............................................................10

In re Kerner Printing Co., 178 B.R. 363 (Bankr. S.D.N.Y. 1995) .................................................6

Knight v. U.S Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986) ...............................................................15

Liberty Mut. Ins. Co. v. Leroy Holding Co., 226 B.R. 746 (N.D.N.Y. 1998) ........................13, 14

Neshewat v. Salem, 365 F. Supp. 2d 508 (S.D.N.Y. 2005),
    aff'd, 194 Fed. Appx. 24 (2d Cir. 2006) ...............................................................................11

United States v. Sterling Nat'l Bank & Trust Co., 494 F.2d 919 (2d Cir. 1974) ............................6

## STATE CASES

Aspen Indus. v. Marine Midland Bank, 52 N.Y.2d 575,
    439 N.Y.S.2d 316 (1981) .....................................................................................5, 6, 12, 13

Chemical Bank N.Y. Trust Co. v. Staten Island Bd. of Jewish Educ., Inc.,
    23 A.D.2d 833, 259 N.Y.S.2d 501 (1st Dep't), aff'd, 16 N.Y.2d 909,
    264 N.Y.S.2d 699 (1965) ......................................................................................................7

Cibro Petroleum Prods., Inc. v. Fowler Finishing Co., 92 Misc. 2d 450,
    400 N.Y.S.2d 322 (Sup. Ct. Albany County 1977) ..........................................7, 10, 12, 13, 14

Crocker -Wheeler Co. v. Varick Realty Co., 43 Misc. 645, 88 N.Y.S. 412
    (App. Term. N.Y. 1904), aff'd, 104 A.D.2d 568, 94 N.Y.S.2d 23 (1905) ...............................7

Key Lease Corp. v. Manufactures Hanover Trust Co., 117 A.D.2d 560,
    499 N.Y.S.2d 66 (1st Dep't 1986) ...................................................................................11, 12

Lake Ontario Prod. Credit Ass'n v. P'ship, 138 A.D.2d 930,
    526 N.Y.S.2d 985 (4th Dep't 1988)..................................................................5

Nat'l Bank of N. N.Y. v. Shaad, 60 A.D.2d 774, 400 N.Y.S.2d 965 (4th Dep't 1977) ................4

Norstar Bank v. Davis, 238 A.D.2d 892, 661 N.Y.S.2d 106 (4th Dep't 1997) ............................11

Resner v. Greeley, 212 A.D.2d 619, 622 N.Y.S.2d 330 (1st Dep't 1995)....................................11

Travelers Cas. & Sur. Co. v. Target Mech. Sys., 6 Misc. 3d 1003(A),
    800 N.Y.S.2d 358 (Sup. Ct. Kings County 2004) ) ................................................11

Waterways Ltd v. Barclays Bank PLC, 202 A.D.2d 64, 615 N.Y.S.2d 886
    (1st Dep't 1994) ..........................................................................................9

Weber v. Huerstel, 11 Misc. 214, 32 N.Y.S. 1109 (Sup. Ct. N.Y. County 1895) ..........................7

## STATUTES

Debtor & Creditor Law §151 (McKinney's 2008) ......................................................4, 6

## MISCELLANEOUS

Black's Law Dictionary 644 (6th ed. 1990)..............................................................7

Defendant Signature Bank ("Signature") respectfully submits this reply memorandum of law in further support of its motion for summary judgment dismissing the complaint of Plaintiff M&I Equipment Finance Company ("M&I"), and in opposition to M&I's cross-motion for summary judgment.[1]

## PRELIMINARY STATEMENT

To prevail in this action, M&I must prove not only that property of the Judgment Debtors was available to satisfy M&I's judgment at the time when it served the First Restraining Notice, but also that M&I had a superior interest in the funds it seeks to recover. See Defendant's Memorandum of Law dated June 2, 2008 ("Def. Mem.") at 7-8. Absent such a showing, M&I cannot claim to have been damaged by Signature's failure to comply with the First Restraining Notice.

As a matter of law, M&I cannot make such a showing because Signature at all times had a perfected security interest in the funds which was superior to M&I's interest in the funds as a judgment creditor. Moreover, M&I had both a contractual and statutory right to set off the funds in the account against the debt owed to Signature by the Judgment Debtors. There is no material issue of fact regarding the priority of Signature's interest in the funds in question, and contrary to M&I's argument, Signature did not waive either its perfected security interest in the funds or its contractual and statutory rights of set-off.

## FACTUAL COUNTER-STATEMENT

M&I's representation of the "facts" is nothing more than an attempt to create a basis upon which this court should deny the motion. The relevant facts, however, are not in dispute. A representative of Signature signed an acknowledgment of receipt of the First Restraining Notice on March 5, 2007. The Bank did not restrain the funds in the Judgment

---

[1] Terms previously defined in Signature's Memorandum of Law dated June 2, 2008 will have the same meaning where used herein.

Debtors' accounts until May 23, 2007.  During the Unrestrained Period a total of $5,432,284.84 had been deposited in the Judgment Debtors' account (including the $117,076.70 that was on deposit as of close of business March 5, 2007).[2]  As of March 5, 2007, the Judgment Debtors had given guarantees and promissory notes to the Bank in the amount of $8.25 million and there was never less than $7,453,636.85 owed to the Bank from March 5, 2007 until November 15, 2007 when the Bank exercised its final right of set off against all funds in the Judgment Debtors' accounts.

M&I never served an execution upon any of those accounts, even though the individual Judgment Debtor, Moise Banayan, testified While the "legal services" employee at Signature mistakenly advised M&I on April 7, 2007 that the Bank did not have a lien on the Judgment Debtors' property and that the Judgment Debtors were not indebted to the Bank, M&I was advised on at least two occasions of the true nature of the Judgment Debtors' banking relationship: (1) at a post-M&I Judgment deposition that both his companies, the other Judgment Debtors, maintained all their bank accounts at Signature; and (2) in July 2007 when M&I was forwarded by Signature the operative loan documents, including the Security Agreement, the UCCs, the Promissory Notes and Guaranties of Payment.  Yet, M&I still failed to serve any writ of execution upon the Judgment Debtors' accounts.  Finally, while the Bank agreed to forbear on declaring a default and loaned additional monies to the Judgment Debtor in August 2007, it reserved its right to exercise all remedies including those of set off at any time and never waived the right to do were M&I to serve a writ of execution.

---

[2]    While M&I contends that over 6 million had been transferred out of the Judgment Debtors' accounts during the Unrestrained Period, the explanation is that  the Judgment Debtors had overdraft protection with Signature.

No amount of rhetoric surrounding Signature's failing to initially restrain the funds or to respond properly to the information subpoena can support M&I's claim for damages.[3] Simply stated. even if Signature had immediately complied with the restraining notice and frozen the funds in the accounts, M&I would have had no right to the funds in the Judgment Debtors' accounts because Signature had a superior, perfected security interest in the funds, as well as the right set them off against the debt owed to Signature which at all relevant times exceeded the amount on deposit. It is clear that the relevant facts upon which this motion is to be decided are not in dispute and require judgment in favor of Signature.

## ARGUMENT

### POINT I

### SIGNATURE AT ALL TIMES HAD A
### PERFECTED SECURITY INTEREST IN THE FUNDS

It is undisputed that Signature had a perfected security interest in the funds in the Judgment Debtors' accounts at the time when M&I served the First Restraining Notice. M&I does not dispute that Ahava and LCD executed a Security Agreement granting Signature a first lien security interest in all of the assets of Ahava and LCD, which included, among other things, all personal assets, deposit accounts, securities, and investment property. See Def. Mem. 2-3, citing Bloch Decl. ¶ 7, Exh. D; 56.1 Stmt. ¶ 5. Nor does M& I dispute that Signature properly perfected its security interest by filing UCC financing statements with the State of New York. See id. at 3, citing Bloch Decl. ¶¶ 8, 18, Exh. E; 56.1 Stmt. ¶ 6.

---

[3]    For example, while M&I sought Mr. Bloch's deposition after the service of the Bank's motion and Signature had in fact originally offered to have him deposed, when it became clear that M&I really sought to question Signature on its efforts to locate assets of the Judgment Debtors in connection with Signature's own March 14, 2008 judgment for $9,338,962.16 against the Judgment Debtors, jointly and severally, Signature refused to go forward with the deposition when M&I refused to limit it to the issues central to the instant motion.

3

Similarly, M&I does not and cannot contest the fact that Signature had both a contractual right to set off against the funds in the Judgment Debtors' accounts pursuant to the loan documents, as well as a statutory right to set off pursuant to New York's Debtor and Creditor Law § 151.  See Def. Mem. 2, citing Bloch Decl. ¶¶ 4, 5, Exh. A § 8.20; 56.1 Stmt. ¶¶ 1-3; see also Def. Mem. 8.

## POINT II

### <u>SIGNATURE DID NOT WAIVE ITS SECURITY INTEREST IN THE FUNDS</u>

As noted above, M&I does not and cannot contest the fact that Signature had a properly perfected security interest in the funds at the time it was served with the First Restraining Notice.  Nor does it dispute that the loan documents provide Signature with a contractual right of set off, or that Signature has a statutory right to set off pursuant to Section 151 of the Debtor and Creditor Law.

Recognizing that Signature had a superior interest in the funds in the Judgment Debtors' accounts, M&I argues that Signature "waived" both its security interest and its contractual and statutory rights to set off by allowing funds to be disbursed from the accounts after service of the First Restraining Notice.  See Pl. Mem. 15-16 ("the right to set off afforded by Section 151 can be waived... A bank that allows a judgment debtor to disperse funds from its accounts after a restraining notice is served has certainly waived its security interest and right to set off as to those fund").  Notably, M&I does not cite any authority, from any jurisdiction, in support of this proposition. See id.

None of the cases cited by M&I supports the proposition that a secured party can waive its perfected security interest by allowing funds to be disbursed from an account after service of a restraining notice.  Indeed, only one of the cases cited by M&I even involved a party with a perfected security interest.  See <u>Nat'l Bank of N. N.Y. v. Shaad</u>, 60 A.D.2d 774, 774, 400

4

N.Y.S.2d 965, 966 (4th Dep't 1977) (Pl. Mem. 15).  In that case, the court held that an issue of fact was presented as to whether the bank could have waived or been estopped to enforce its security interest in a travel lift where the defendant purchased the collateral in the belief that it was free and clear of the bank's lien, and alleged that he relied upon the statement of the vice-president of the bank, who expressly informed the defendant that the bank "had no lien or further interest in" the collateral.  Id. at 774-75, 400 N.Y.S.2d at 966.  Certainly no such express waiver of Signature's security interest or right to set off is presented here, nor is there any allegation that M&I relied to its detriment on any statement made by Signature.

In fact, New York law strongly supports the opposite proposition -- that a secured creditor who allows the debtor to dispose of some portion of the property in which it holds a security interest does not thereby waive its security interest in the remaining property.  For example, in Aspen Indus. v. Marine Midland Bank, 52 N.Y.2d 575, 581, 439 N.Y.S.2d 316, 320 (1981), which is directly on point and controlling, the defendant bank did not exercise its right to set off against funds in the judgment debtor's account until five days after it was served with a restraining notice, and continued to disburse funds to third parties during that five-day time period.  Given the fact that the bank prevailed in a subsequent action by the judgment creditor, the New York Court of Appeals clearly did not view the bank's disbursement of funds from the account as a "waiver" of its right to set off.  Similarly, in Lake Ontario Prod. Credit Ass'n v. P'ship, 138 A.D.2d 930, 931, 526 N.Y.S.2d 985, 985 (4th Dep't 1988), the plaintiff held a perfected security interest in the debtors' cattle under a security agreement which contained a provision prohibiting the sale of the collateral.  The court held that the plaintiff's acquiescence in prior sales of collateral did not constitute a waiver of the plaintiff's perfected security interest in

5

the cows. Id.[4]  Here, like the bank in Aspen, Signature did not waive its security interest in the funds on deposit by those accounts.

      With respect to a "waiver" of Signature's right to set off, the cases cited by M&I again fail to support its position.  The first case cited by M&I involved a creditor's right of set-off where the creditor expressly agreed to repay the debtor as part of the same transaction, under circumstances which would have amounted to fraudulent conveyance.  See Banque Arabe v. Bulk Oil (USA), Inc., 726 F. Supp. 1411, 1423 (S.D.N.Y. 1989) (Pl. Mem. 15).  No similar facts are presented here.

      The other case cited by M&I is inapposite because it involved a federal tax levy.  By federal statute, the Internal Revenue Service has the right to immediate possession of any of the taxpayer's property which is not subject to a prior judicial attachment or execution.  See United States v. Sterling Nat'l Bank & Trust Co., 494 F.2d 919, 921 (2d Cir. 1974) (Pl. Mem. 15).  The Sterling court held that the full amount in a taxpayer's bank account is the property of the taxpayer.  Id. at 922.  Thus, a creditor has no right to set off against a taxpayer's property that is subject to a federal tax levy once the notice of levy has been served.  Id.

      By contrast, New York law expressly grants a garnishee a right to set off upon execution against any of the debtor's property held by the garnishee.  See N.Y. Debtor & Creditor Law § 151; see also Aspen, 52 N.Y.2d at 582, 439 N.Y.S.2d at 812 ("In short, this statute confers upon a garnishee a right to set off any debt owed to it by a judgment debtor.").  It does not matter whether the funds on deposit are deemed to be the "property" of the customer at the time of execution because this right of set off "may be exercised even after the judgment

---

[4]     See also In re Kerner Printing Co., 178 B.R. 363, 367 (Bankr. S.D.N.Y. 1995) (creditor's consent to sale of equipment covered by its security interest did not constitute a waiver of its security interest in the proceeds received for the equipment); In re Braten Apparel Corp., 68 B.R. 955, 969

creditor has undertaken enforcement of his claim against the judgment debtor." Id. (emphasis added); see also Cibro Petroleum Prods., Inc. v. Fowler Finishing Co., 92 Misc. 2d 450, 452-53, 400 N.Y.S.2d 322, 325 (Sup. Ct. Albany County 1977) ("To hold that the petitioner lost its right of setoff when the execution was issued would be to ignore the legislative history surrounding the amendment of the statute and render the language of the statute meaningless and of no effect.").

Finally, M&I also contends that Signature waived its right of set off in its Forbearance Agreement with the Judgment Debtors by expressly disclaiming the right to exercise its remedies, including the right of set off. However, nothing in the Forbearance Agreement entered into by Signature constituted a waiver of either its security interest or its statutory and contractual rights to set off. See Pl. Mem. 5-7, 15-16. A "forbearance" has been defined as "[a] delay in enforcing a legal right," and not a waiver of such right. Black's Law Dictionary 644 (6th ed. 1990). Indeed, it is well established under New York law that an agreement to forbear from enforcing one's rights does not constitute a waiver of such rights. See Chemical Bank N.Y. Trust Co. v. Staten Island Bd. of Jewish Educ., Inc., 23 A.D.2d 833, 259 N.Y.S.2d 501 (1st Dep't), aff'd, 16 N.Y.2d 909, 264 N.Y.S.2d 699 (1965); Crocker-Wheeler Co. v. Varick Realty Co., 43 Misc. 645, 645, 88 N.Y.S. 412, 413 (App. Term. N.Y. 1904), aff'd, 104 A.D.2d 568, 94 N.Y.S.2d 23 (1905); Weber v. Huerstel, 11 Misc. 214, 214, 32 N.Y.S. 1109, 1110-11 (Sup. Ct. N.Y. County 1895).

Moreover, any factual question of waiver is foreclosed by the terms of the Forbearance Agreement itself, which expressly state that:

---

(Bankr. S.D.N.Y. 1987) (creditor did not waive its security interest in debtor's inventory by allowing debtor to restock returned merchandise).

(a) the [Judgment Debtors] acknowledge that the Existing Defaults have occurred. The [Judgment Debtors] acknowledge that [Signature] has the absolute and unconditional right (i) to declare all loans (collectively, the "Loans") made to the applicable Borrowers pursuant to the applicable Loan Documents and all obligations, indebtedness and liabilities of the [Judgment Debtors] under the Loan Documents (collectively, the "Obligations") in each case immediately die and payable in full and (ii) to demand payment in full of the Obligations. *The [Judgment Debtors] further acknowledge that as a result of the Existing Defaults, [Signature] is entitled to exercise any of its rights and remedies immediately as provided in the Loan Documents, without further notice or opportunity to cure.*

\* \* \*

(c) The parties hereto agree that the execution and delivery of this Forbearance Agreement any other Forbearance Documents *shall not prejudice any right or rights which [Signature] now has or may have in the future under any of the Loan Documents in the event of any other breach or violation of any term, condition or other covenant set forth in this Forbearance Agreement or any of the other Transaction Documents.*

Bloch Decl. Exh. I at ¶ 3 (emphases added). The Forbearance Agreement further provides that:

Except as expressly set forth in this Forbearance Agreement, *nothing contained in this Forbearance Agreement shall be deemed as a waiver by the Lender of its rights and remedies against the Obligors. The Lender expressly reserves its rights and remedies, at law or equity, as against Obligors, with a waiver of none.*

Bloch Decl. Exh. I at ¶ 14.

Finally, the Forbearance Agreement expressly provides for termination of forbearance in the event of any default or event of default under any of the Transaction Documents, which is defined to include the Forbearance Agreement and all of the Loan Documents, including the security agreements. See Bloch Decl. ¶ 11(b); Bloch Reply ¶ 10. An execution by M&I upon the restraining notices it had served on Signature would most certainly have constituted an event of default under Section 8(g) of the August 22, 2005 Security

8

Agreement (Exhibit D), which was executed in connection with the original loan transaction to the Judgment Debtors and provides that an event of default would occur:

> (g)    upon the suspension of business by a Grantor, or upon the issuance of any warrant, process, or order of attachment, *garnishment of lien* and or/the filing of a lien as a result thereof against any of the property of Grantor (or any endorser, guarantor or surety of or upon any of the Obligations) where the amount claimed is in excess of $50,000 in the aggregate;

Bloch Decl. Exh. D at ¶ 8(g) (emphasis added).  An execution by M&I upon the restraining notices it had served on Signature would also have constituted an event of default under Section 8(g) of the August 27, 2007 Security Agreement, executed in connection with the Forbearance Agreement, which contains the identical language.  See Bloch Decl. Exh. N at ¶ 8(g).

Such an express reservation of Signature's rights and remedies in the Forbearance Agreement negates any finding of waiver as a matter of law.  For example, in Waterways Ltd v. Barclays Bank PLC, 202 A.D.2d 64, 615 N.Y.S.2d 886 (1st Dep't 1994), the plaintiff argued -- as M&I does here (Pl. Mem. 5) -- that the defendant bank waived its right to accelerate the loan after the plaintiff defaulted by failing to make the first payment due under the note.  The court rejected this argument, noting that the loan agreement:

> provided that any delay or forbearance did *not* constitute a waiver of any rights under the Note or other loan documents. Accordingly, Barclay's "ambiguous" behavior subsequent to plaintiff's default was entirely consistent with the documents and is insufficient to create an issue of fact.

202 A.D.2d at 72, 615 N.Y.S.2d at 891-92 (emphasis in original).

In sum, there is no genuine issue of fact with respect to M&I's "waiver" argument.  Signature did not waive either its security interest in the funds or its contractual and statutory rights to set off the debt owed to it by the Judgment Debtors against those funds.

## POINT III

### BECAUSE M&I DID NOT SUFFER ANY DAMAGE AS A RESULT OF SIGNATURE'S FAILURE TO HONOR THE FIRST RESTRAINING NOTICE M&I'S CLAIMS FAIL AS A MATTER OF LAW

There is no question that Signature had a perfected security interest in the funds in the Judgment Debtors' accounts and a contractual and statutory right to set off against the funds at the time it was served with the First Restraining Notice. Signature did not waive any of its rights or remedies, and in fact expressly reserved them. Moreover, at no time did the amount on deposit in the Judgment Debtors' accounts and subsequently deposited from the time of alleged receipt of the First Restraining Notice until Signature restrained the funds ever exceed the indebtedness owed to Signature. In light of these facts, M&I did not suffer any damages as a result of Signature's failure to obey the First Restraining Notice since there were never any funds available to satisfy M&I's judgment, even if it had attempted to execute upon those accounts (which it did not). Signature is entitled to summary judgment as a matter of law.

A fact is material, for purposes of summary judgment, only "if it 'might affect the outcome of the suit under the governing law.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Here, Signature's alleged failure to comply with the First Restraining Notice (and Information Subpoena) is immaterial because compliance with the restraining notice would not have changed the outcome of this action. If Signature had immediately frozen the accounts upon service of the First Restraining Notice, M&I still would <u>not</u> have been entitled to a turnover of the funds because Signature at all times had a perfected security interest that was superior to M&I's rights as a judgment creditor and at no time did the amount on deposit exceed the amount of the indebtedness owed to the Bank. See Cibro, 92 Misc. 2d at 452, 400 N.Y.S.2d at 324; see also

10

Norstar Bank v. Davis, 238 A.D.2d 892, 893, 661 N.Y.S.2d 106, 107 (4th Dep't 1997); Resner v. Greeley, 212 A.D.2d 619, 619, 622 N.Y.S.2d 330, 331 (1st Dep't 1995); Travelers Cas. & Sur. Co. v. Target Mech. Sys., 6 Misc. 3d 1003(A), 800 N.Y.S.2d 358 (Sup. Ct. Kings County 2004).

It is not enough for M&I to show that it has an interest in the property of the Judgment Debtors. See Pl. Mem. 25. As the Second Circuit has observed, this is only the first step in the analysis. See Beauvais v. Allegiance Secs., Inc., 942 F.2d 838, 840 (2d Cir. 1991). Rather, M&I must also be able to show that the Judgment Debtors were entitled to the possession of the funds or that M&I's "rights to the property [we]re superior" to those of Signature. See id.; see also Neshewat v. Salem, 365 F. Supp. 2d 508, 523-24 (S.D.N.Y. 2005), aff'd, 194 Fed. Appx. 24 (2d Cir. 2006). As the Second Circuit has explained:

> A debtor obviously has an interest in its own money or property held by a third party, but that does not necessarily mean it is entitled to *possession* of that money or property. For example, here Allegiance had an interest in the funds held by appellant, but it may not have been entitled to possession of those funds because the clearing agreement may have given appellant the right to apply them to Allegiance's unpaid balance for services rendered to it or its customers. Under these circumstances, Beauvais would have no right to the turn-over remedy because appellants would have a prior lien on the funds.

Beauvais, 942 F.2d at 841 (emphasis in original); see also Key Lease Corp. v. Manufactures Hanover Trust Co., 117 A.D.2d 560, 561-62, 499 N.Y.S.2d 66, 68 (1st Dep't 1986) (judgment creditor was not entitled to turnover of property held by defendant trust company as security for nine demand notes; judgment debtor was not entitled to possession of the property and judgment creditor's rights were not superior to trust company's rights).[5]

---

[5]    None of these cases suggest that a garnishee must "exercise" its right to set off before it has a superior right to possession of the property. See Pl. Mem. 15. Indeed, neither the defendant in Beauvais nor the defendant in Key Lease had exercised their rights to take possession of the property at the time they were served with an execution and sheriff's levy. The mere existence of a superior interest in the property, and not its exercise, is what governs. See Beauvais, 942 F.2d

11

The same situation is presented here. While the Judgment Debtors may have had an interest in the funds held by Signature, it does <u>not</u> automatically follow that they were entitled to possession of those funds since Signature had a perfected security interest in the funds and the contractual and statutory right to set those funds off against the debt owed to Signature. Thus, it is irrelevant whether the funds in the account "remained the customer's property" at the time the First Restraining Notice was served (<u>see</u> Pl. Mem. 15); what matters is whether the Judgment Debtors would have had a right to possession of the funds or M&I had a superior right to the funds, given Signature's prior security interest in and right to set off against the funds. Because "neither of the predicate conditions for a turnover order" existed, M&I would not have been able to demand the turn over of the funds held by Signature. <u>See</u> <u>Key Lease</u>, 117 A.D.2d at 562, 499 N.Y.S.2d at 68.

As a result, M&I did not suffer any injury as a result of Signature's failure the case at bar. In <u>Aspen</u>, the New York Court of Appeals held that the defendant bank -- like Signature here -- "at all times relevant had a superior right to offset the entire amount present in the [ ] account, leaving no funds available to satisfy [the plaintiff's] judgment." 52 N.Y.2d at 583, 439 N.Y.S.2d 320. As a result, "no loss resulted to" the plaintiff, who could not establish that it had been damaged by the bank's disbursement of funds after service of the restraining notice. 52 N.Y.2d at 581-83, 439 N.Y.S.2d at 320. As the court explained:

> even if it were assumed that [the bank] violated the restraining notice, [the plaintiff] would not be entitled to recover. While a violation of a restraining notice can subject the garnishee to liability, ... a judgment creditor, in order to recover, <u>must establish that it sustained damages as a result of the garnishee's disobedience of the notice.</u> It is necessary, therefore, for the judgment creditor to demonstrate that property of the judgment

---

at 841 (judgment creditor was not entitled to turnover where garnishee had a prior lien on the funds).

> debtor was available to satisfy the judgment at the time the restraining notice was in effect... <u>Here, however, because of [the bank's] right of setoff to satisfy a pre-existing obligation of the judgment debtor to the bank, [the plaintiff] cannot establish such damages</u>.

52 N.Y.2d at 581, 439 N.Y.S.2d at 320 (emphases added, internal citations omitted). Notably, the court reached this conclusion even though the bank did not exercise its right to set off until five days <u>after</u> it was served with the restraining notice and continued to allow disbursements during that five-day period. <u>Id</u>. Thus, contrary to M&I's argument, it clearly does not matter that Signature had not yet exercised its right to set off at the time when M&I served the First Restraining Notice, nor does it matter that Signature honored checks written on the account after service of that notice. <u>See</u> Pl. Mem. 17.[6] What matters is that M&I: (1) would not have been entitled to demand possession of the funds at any time; and (2) did not have rights to the funds that were superior to Signature's. Therefore, M&I has not been injured as a result of Signature's failure to honor the First Restraining Notice.

A federal district court reached a similar conclusion in <u>Liberty Mut. Ins. Co. v. Leroy Holding Co.</u>, 226 B.R. 746 (N.D.N.Y. 1998). In <u>Liberty Mutual</u>, the court held that the judgment creditor had suffered no injury because the garnishee at all times had a perfected security interest that was superior to the judgment creditor's claim. <u>Id.</u> at 754. Moreover, the amount of debt subject to the garnishee's security interest at all times exceeded the amount of the judgment creditor's judgment. <u>Id.</u> As a result:

> [the judgment creditor's] restraining notice, any other efforts it undertook or would have undertaken would necessarily and inevitably have been defeated by [the garnishee's] superior claim... [the garnishee's conduct], it could not have caused any injury to [the judgment creditor] because [the judgment debtor's]

---

[6]   Indeed, Signature would have had the right to set off even if M&I had attempted to execute its judgment. <u>See</u> <u>Cibro</u>, 92 Misc. 2d at 452-53, 400 N.Y.S.2d at 325.

> failure to satisfy any or all of [the judgment creditor's] judgment
> resulted solely from the superiority of [the garnishee's] security
> interest, and not from any wrongful conduct.

226 B.R. at 754.

Here, as in Liberty Mutual, any effort by M&I to collect its judgment would necessarily and inevitably have been defeated by Signature's security interest and superior claim to the funds. If Signature had immediately restrained the Judgment Debtors' accounts and then waited for M&I to execute its judgment (which it never did)[7], Signature would not have been obligated to turn over the funds to M&I and would have been able to enforce its security interest and/or exercise its rights to set off against the accounts.[8] Because the amount owed to Signature at all times greatly exceeded the funds available in the accounts (see Bloch Decl. ¶¶ 2, 30; see also Declaration of Robert Bloch in Further Support of Signature's Motion for Summary Judgment (the "Bloch Reply") ¶¶ 7-8), there would have been no funds left after set off to pay any portion of M&I's judgment. The bottom line is that no portion of M&I's judgment would have been satisfied even if Signature had properly complied with the First Restraining Notice because, as in Aspen, there were no funds in the accounts available to satisfy the M&I Judgments and, as a result, M&I has not suffered any damage and cannot maintain an action under CPLR 5222. Tellingly, M&I cannot distinguish Liberty Mutual and does not even bother to discuss it

---

[7]    Liens of judgment creditors are perfected only by the issuance of an execution pursuant to CPLR 5202. Cibro, 92 Misc. 2d at 452, 400 N.Y.S.2d at 324.

[8]    Contrary to M&I's argument, this is not mere "speculation" as to what Signature "would have done." See Pl. Mem. 20. Signature did in fact exercise its right to set off several times. See Bloch Decl. ¶¶ 27-28. The fact that it did not set off the funds to satisfy the indebtedness does not mean it would not have immediately done so upon receiving a sheriff's execution for the funds on account. Furthermore, Bloch testifies that upon presentation of a writ of execution, the Bank would have immediately exercised its right of set off as contemplated and expressly provided in the Forbearance Agreement and loan documents. (Bloch Reply Decl. ¶ 11.)

14

in its memorandum of law. Its efforts to distinguish Aspen (Pl. Mem. 16) are similarly unavailing.

M&I has not suffered any loss, and Signature is entitled to summary judgment.

## POINT IV

## M&I IS NOT ENTITLED TO FURTHER DISCOVERY

The facts relevant to Signature's motion for summary judgment are either not in dispute or cannot be contested. Signature has shown that it is entitled to judgment as a matter of law.

As shown in Point II, supra, there is no genuine factual issue with respect to M&I's "waiver" argument. As a matter of law, Signature did not waive either its security interest or its contractual and statutory rights to set off.

Nor is there any merit to M&I's claim that Signature's motion is based on speculation about what Signature "would have done." See Pl. Mem. 20. First, Signature did, in fact, exercise its right of setoff on several occasions. See Bloch Decl. ¶¶ 27-28. Second, M&I does not cite any authority for the proposition that Signature had to immediately exercise its right to setoff in order to have an interest in the funds superior to that of M&I. The mere existence of Signature's security interest and rights of setoff is what matters -- not their exercise. Thus, the question of whether Signature "would have" exercised its right of setoff is immaterial. "[T]he mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment." Knight v. U.S Fire Ins. Co., 804 F.2d 9, 11-12 (2d Cir. 1986). If M&I had attempted to execute on its judgment, constituting an event of default under Section 8(g) of the security agreements, Signature undoubtedly would have immediately exercised its right and remedy of setoff. (Bloch Reply Decl.¶¶ 10-11.)

15

Next, M&I claims that there is a "dispute" as to the amount of Signature's right of setoff. <u>See</u> Pl. Mem. 21. It claims that "Signature has not submitted any proof demonstrating the actual amount of outstanding indebtedness owed to it by the Judgment Debtors as of March 5, 2007." <u>See id.</u> That is simply not true. As shown in the accompanying declaration of Robert Bloch in further support of Signature's motion, , M&I was provided in connection with this motion and in fact annexed to their moving papers, the Grid Schedule evidencing the outstanding loan balances of the Judgment Debtors for the close of each month, beginning with the month the First Restraining Notice was served through the month the right of setoff of all funds held in the Judgment Debtors' accounts was exercised by the Bank. (Orbach Declaration, Exh. 37; Bloch Reply ¶ 4). Mr. Bloch has further included true and correct copies of the bank records for the last day of every month beginning in March 2007 (the month in which Signature is alleged to have received M&I's First Restraining Notice), through November 2007 (the month in which Signature exercised its final right of set off and applied the remaining monies in the Judgment Debtors' accounts to the indebtedness owed to the Bank). (See Bloch Reply ¶ 4, Exh. 1). At all times, Bloch maintained that the amount of indebtedness by the Judgment Debtors to the Bank far exceeded the amount on deposit and deposited during the Unrestrained Period (a position of which M&I was aware since at least July 2007), and simply claiming that the exact amount was not offered in support of the motion cannot raise a genuine issue of fact sufficient to deny the proper grant of summary judgment in favor of Signature. 2007.

Further, the indebtedness in fact owed to the Bank from the time the First Restraining Notice was served until the Bank exercised its final right offset against all funds in the accounts of the Judgment Debtors never fell below $7,453,636.85, which was far in excess of the $5.4 million on deposit and that had subsequently been deposited from the time of the alleged receipt by Signature of the First Restraining Notice on March 5, 2007 through the date all

16

accounts were restrained on May 23, 2007. The documents submitted with Signature's motion show that the outstanding amounts due to Signature as of March 31, 2007 were $7.7 million, which far exceeded the funds on deposit in the Judgment Debtors' accounts. Bloch Reply ¶¶ 7-8.

Finally, M&I offers no authority for its suggestion that a secured creditor like Signature, with a security interest and rights to set off against the funds in a debtor's account, must forgo its rights, turn over the funds in its possession, and then look to the funds of a guarantor for reimbursement. See Pl. Mem. 21-22. Nor does M&I offer any authority in support of the proposition that funds in a guarantor's account are to be included in determining whether the funds in the Judgment Debtors' accounts exceeded the amount of indebtedness owed to the bank. See id. In the absence of any authority for these propositions, M&I's demand for additional discovery concerning the guarantors' accounts must be similarly denied.

17

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in its moving brief, defendant Signature Bank respectfully requests that the Court grant its motion for summary judgment in its entirety and dismiss the complaint of plaintiff M&I Equipment Finance Company with prejudice, deny Plaintiff's cross-motion for summary judgment, and grant Signature Bank such additional relief as the Court may deem just and proper.

Dated: New York, New York
      August 4, 2008

HERRICK, FEINSTEIN LLP

By _____
     Mara B. Levin (mlevin@herrick.com)
     Marni E. Weiss
     *Attorneys for Defendant Signature Bank*
     2 Park Avenue
     New York, New York  10016
     (212) 592-1400

18