UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

M&I EQUIPMENT FINANCE COMPANY,

                          Plaintiff,                  Civil Action No.:
                                                             08-CV-02164 (GEL/GWG)
     v.

SIGNATURE BANK,

                          Defendant.

-----------------------------------------------------------------

**PLAINTIFF M&I EQUIPMENT FINANCE COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**(Electronically filed)**

BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

Attorneys for Plaintiff

1462079.2

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

REPLY ARGUMENT .................................................................................................................. 1

    I.   The Material Facts Are Undisputed and Establish Liability and Damages As a Matter of Law ................................................................................................. 1

    II.  Signature Has Failed to Raise a Genuine Issue of Material Fact With Respect to its Purported "Right to Set Off" Defense ........................................................... 2

        A.  Signature's Claim to Have Had a Right to Set Off Is Immaterial As a Matter of Law ................................................................................................. 3

        B.  Signature Has Failed to Submit Proof in Admissible Form to Quantify Its Alleged Right to Set Off ................................................................................................. 5

        C.  Signature Has Failed to Account for Its Duty to Marshal Assets ................................. 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

## CASES

Aspen Industries, Inc. v. Marine Midland Bank,
    52 N.Y.2d 575, 439 N.Y.S.2d 316 (1981) ................................................................... 4

Barlow v. Connecticut,
    319 F. Supp. 2d 250 (D. Conn. 2004) ......................................................................... 6

In re Braten Apparel Corp.,
    68 B.R. 955 (Bankr. S.D.N.Y. 1987) ....................................................................... 6, 7

Cibro Petroleum Products, Inc. v. Fowler Finishing Co., Inc.,
    92 Misc. 2d 450, 400 N.Y.S.2d 322 (Sup. Ct., Albany Co. 1977) ............................. 3

City of New York v. Birch,
    124 Misc. 2d 984, 478 N.Y.S.2d 231 (Sup. Ct., N.Y. Co. 1984) .............................. 4

Fargo v. Squiers,
    154 N.Y. 250 (1897) .................................................................................................. 7

McDonald v. Gonzalez,
    2007 U.S. Dist. LEXIS 21720 (N.D.N.Y. March 27, 2007) ..................................... 6

In re Tampa Chain Company, Inc.,
    53 B.R. 772 (Bankr. S.D.N.Y. 1985) ....................................................................... 8, 9

Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,
    317 F. Supp. 2d 373 (S.D.N.Y. 2004) ....................................................................... 6

Wahhab v. City of New York,
    386 F. Supp. 2d 277 (S.D.N.Y. 2005) ....................................................................... 6

Walther v. Bank of New York,
    772 F. Supp. 754 (S.D.N.Y. 1991) ......................................................................... 7, 9

## STATUTES

Fed. R. Evid. 803 ................................................................................................................. 6

N.Y. C.P.L.R. 5222 ........................................................................................................... 3

N.Y. C.P.L.R. § 5222(b) ............................................................................................. 3, 4

## ADDITIONAL SOURCES

N.Y. Jurisprudence 2d § 300 (2006) ................................................................................ 9

N.Y. Jurisprudence 2d § 302 (2006) ................................................................................ 8

## PRELIMINARY STATEMENT

M&I submits this Reply Memorandum of Law in further support of its cross-motion for summary judgment.

## REPLY ARGUMENT

### I. The Material Facts Are Undisputed and Establish Liability and Damages As a Matter of Law

M&I's cross-motion for summary judgment must be granted. The material facts establishing liability and damages are set forth in M&I's Local Rule 56.1(a) Statement of Undisputed Material Facts (Docket No. 20). Signature concedes all of these facts for purposes of this motion – as it must, for these facts are uncontestable – in its Local Rule 56.1(b) Response (Docket No. 25). The undisputed material facts are as follows:

(a) M&I obtained a judgment against the Judgment Debtors in the amount of $658,994.02, on January 12, 2007;

(b) To date, the entire amount of that judgment remains unsatisfied;

(c) Signature received M&I's First Restraining Notice, in the amount of $658,994.02, via certified mail, return receipt requested, on March 5, 2007;

(d) M&I obtained a second judgment against the Judgment Debtors, in the amount of $60,553.66, on April 23, 2007;

(e) To date, the entire amount of that judgment remains unsatisfied;

(f) Signature received M&I's Second Restraining Notice, in the additional amount of $60,533.66, via certified mail, return receipt requested, on May 14, 2007;

(g) Signature failed to honor M&I's restraining notices from March 5, 2007 to at least May 23, 2007 (the "Unrestrained Period");

 (h) From the time Signature received M&I's First Restraining Notice on March 5, 2007 through May 13, 2007, Signature paid over, transferred or suffered the transfer of more than $658,994.02 from the Judgment Debtors' accounts;

 (i) From the time Signature received M&I's Second Restraining Notice on May 14, 2007 through May 23, 2007, Signature paid over, transferred or suffered the transfer of more than $60,553.66 from the Judgment Debtors' accounts; and

 (j) At no time during the Unrestrained Period did the Judgment Debtors' accounts at Signature contain twice the amount of M&I's judgments.

See M&I's Local Rule 56.1(a) Statement (Docket No. 20), ¶¶ 1-10; Signature's Local Rule 56.1(b) Response (Docket No. 25), ¶¶ 1-10.

For the reasons set forth in M&I's opening Memorandum of Law (see pp. 14-18) (Docket No. 22), these undisputed material facts establish liability and damages as a matter of law, and entitle M&I to summary judgment against Signature for the full amount of M&I's judgments against the Judgment Debtors, i.e., $719,547.68.[1]

## II. Signature Has Failed to Raise a Genuine Issue of Material Fact With Respect to its Purported "Right to Set Off" Defense

For three independent reasons, Signature has failed to raise a genuine issue of material fact with respect to its purported "right to set off" defense. Those reasons are:

---

[1] Signature, in its Reply Memorandum of Law (Docket No. 23), restates that M&I "never served an execution" (see p. 2), but tellingly does not attempt to repeat the meritless argument from its earlier Memorandum that the absence of an execution somehow provides it with a defense that M&I "failed to enforce its judgment." Signature has no such defense. As set forth in M&I's opening Memorandum (pp. 23-25) (Docket No. 22), New York recognizes restraining notices to be independent enforcement devices, gives them the force of an injunction, and holds that violation of the restraining notice by the party served subjects the garnishee to personal liability in a separate plenary action brought by the aggrieved judgment creditor; service of an execution is not a prerequisite to suit when a restraint is disobeyed, let alone when, as happened here, the bank not only fails to restrain the accounts, but also serves untimely and misleading responses to the judgment creditor's first information subpoena – and completely disregards a second – committing multiple breaches of its statutory duties under N.Y. C.P.L.R. Art. 52.

(A) Signature's claim to have had a right to set off is immaterial as a matter of law; (B) Signature has failed to submit proof in admissible form to quantify its alleged right to set off; and (C) Signature has failed to account for its duty to marshal assets.

### A. Signature's Claim to Have Had a Right to Set Off Is Immaterial As a Matter of Law

Signature's sole alleged defense is based on the purported "right to set off" that it allegedly had but never exercised during the Unrestrained Period. However, after two full rounds of briefing, Signature still has not cited *any* New York case absolving a bank from liability where, as here, the bank neither restrained the subject accounts nor set off, but instead let the judgment debtors freely disperse their assets in plain violation of the bank's statutory obligation under N.Y. C.P.L.R. § 5222(b).

Signature's Reply Memorandum cites just one new case involving a bank's response to a restraining notice, *Cibro Petroleum Products, Inc. v. Fowler Finishing Co., Inc.*, 92 Misc. 2d 450, 400 N.Y.S.2d 322 (Sup. Ct., Albany Co. 1977), and that case does not support Signature's position. Just the opposite, *Cibro* underscores that Signature acted unlawfully when it unilaterally disregarded M&I's restraining notices and allowed the Judgment Debtors to disperse millions of dollars from their accounts during the Unrestrained Period. The bank in *Cibro* did not act as Signature acted. It did not ignore the judgment creditor's restraining notice and disburse funds from the subject account in violation of the restraint. Instead, it filed a petition in court to vacate the restraining notice, based on what it believed to be its superior security interest in the funds on deposit. *Cibro*, 92 Misc. 2d at 451, 400 N.Y.S.2d at 324. As discussed in M&I's opening Memorandum of Law (p. 15) (Docket No. 22), a bank is forbidden under N.Y. C.P.L.R. 5222 to honor withdrawals from a restrained account except pursuant to such a court order. Signature *never* moved to vacate either of M&I's restraining notices.

Signature's continued reliance on *Aspen Industries, Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 439 N.Y.S.2d 316 (1981), remains sorely misplaced. Signature brazenly argues in its Reply Memorandum (p. 13) (Docket No. 23) that it "does not matter" that it honored checks written on the Judgment Debtors' accounts after service of M&I's First Restraining Notice, but *Aspen* does not support that argument. Although the garnishee bank in *Aspen* allowed the judgment debtor to withdraw funds from the restrained account after the restraining notice was served, at no time while the restraining notice was in effect did the bank allow the balance in the account to drop below twice the amount then owing on the judgment. *Id.* at 581. Thus, the bank in *Aspen* complied with N.Y. C.P.L.R. § 5222(b), which provides that "[i]f a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money." The *Aspen* court found "this provision of CPLR 5222 to be dispositive of the present appeal." *Aspen*, 52 N.Y.2d at 581. Signature cannot avail itself of this safe harbor; it admits that at no time during the Unrestrained Period did the subject accounts contain twice the amount of M&I's judgments. *See* M&I's Local Rule 56.1(a) Statement (Docket No. 20), ¶ 10; Signature's Local Rule 56.1(b) Response (Docket No. 25), ¶ 10. "CPLR 5222 . . . prohibits the use of funds up until that amount, absent a court order." *City of New York v. Birch*, 124 Misc. 2d 984, 986, 478 N.Y.S.2d 231, 233 (Sup. Ct., N.Y. Co. 1984).

Signature argues in its Reply Memorandum (p. 5) (Docket No. 23) that "a secured creditor who allows the debtor to dispose of some portion of the property in which it holds a security interest does not thereby waive its security interest *in the remaining property*." (Emphasis added). Whatever the merits of that argument might be, it misses the point. It does

4

not matter what security interest, if any, Signature had in what little was left on deposit in the Judgment Debtors' accounts when it finally restrained them *two and a half months* after it received M&I's First Restraining Notice. What matters – and what makes Signature liable to M&I as a matter of law for the full amount of M&I's judgments against the Judgment Debtors – is the undisputed fact that Signature released more than the amount of those judgments (in fact, millions of dollars) from the Judgment Debtors' accounts before it restrained them; Signature plainly waived any security interest and right to setoff as to *those* funds. *See* M&I's opening Memorandum of Law (Docket No. 22), p. 15.

**B.    Signature Has Failed to Submit Proof in Admissible Form to Quantify Its Alleged Right to Set Off**

In any event, Signature has failed to substantiate the alleged debt from which it claims to have derived its purported right to set off. Signature has not produced competent proof of the alleged indebtedness; Signature's proof has been inadmissible and inconsistent. Moreover, Signature has made no showing whatsoever as to the alleged indebtedness on the operative date: March 5, 2007, the day Signature received M&I's First Restraining Notice.

As set forth in M&I's opening Memorandum of Law (p. 21) (Docket No. 22), New York law provides that a bank's right to set off, if any, extends only to obligations that preexist the restraining notice; a bank is not entitled to set off for advances made to the judgment debtors, or on their behalf, after the restraining notice is served, nor is there any right to set off for contingent liabilities. Yet, Signature has not submitted *any* proof demonstrating the actual amount of outstanding indebtedness owed to it by the Judgment Debtors as of March 5, 2007, the date it admits it received M&I's First Restraining Notice. M&I pointed out this deficiency in Signature's proof in its opening Memorandum of Law (*see* pp. 2-4, 21) (Docket No. 22). In response, Signature has now submitted what it contends to be documents that show outstanding

5

1462079.2

amounts due to it as of March 31, 2007, but that date was 26 days *after* it received M&I's First Restraining Notice, and therefore those amounts are irrelevant, even were the Court to assume they are accurate.

Moreover, Signature has failed to lay a proper foundation under Fed. R. Evid. 803 for the documents it now submits, or to otherwise produce evidence in admissible form to support its summary account of the Judgment Debtor's indebtedness at *any* time during the Unrestrained Period. A party cannot rely on inadmissible hearsay to oppose a motion for summary judgment. *See, e.g., McDonald v. Gonzalez*, 2007 U.S. Dist. LEXIS 21720, *8 (N.D.N.Y. March 27, 2007); *see also Wahhab v. City of New York*, 386 F. Supp. 2d 277, 291 (S.D.N.Y. 2005) ("'documents must be properly authenticated in order to be considered by the court at summary judgment stage'" (quoting *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 257 (D. Conn. 2004)); *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 378 (S.D.N.Y. 2004) (documents that would be "inadmissible hearsay to the extent that they are offered to support the existence of the transactions described" could not be considered on summary judgment). There is, of course, compelling reason to question the accuracy of *any* summary account of indebtedness submitted by Signature at this point, for any date. In the first declaration signed by Signature's Robert Bloch, he stated to this Court – under penalty of perjury – that the Judgment Debtors' indebtedness to Signature as of March 1, 2007 was "$8.25 million plus interest." *See* Bloch Decl. (Docket No. 14), ¶ 12. Bloch's second declaration, however, admits that the Judgment Debtors' alleged indebtedness to Signature never came close to that amount. *See* Bloch Reply Decl. (Docket No. 24), ¶ 7 and n.2. In one of the cases Signature cites, *In re Braten Apparel Corp.*, 68 B.R. 955 (Bankr. S.D.N.Y. 1987), the court rejected a bank's summary statement of account; although the summary account was proffered in

a different context, the court's reasoning is equally applicable here: "Bankers simply cannot sustain its burden of proof . . . by offering a bare statement of the total amount . . . accompanied by the statement 'trust me, it's correct.'" *Id.* at 967. Signature's similar lack of competent proof is exacerbated by the inconsistent Bloch declarations.[2]

### C. Signature Has Failed to Account for Its Duty to Marshal Assets

Signature has also failed to show that the funds in the Judgment Debtors' accounts were the only funds available to satisfy its alleged right to set off, in whatever amount that purported right to set off might have existed. As discussed in M&I's opening Memorandum of Law (pp. 4, 21-22) (Docket No. 22), Signature admits that the Judgment Debtors' debts to it were fully secured and guaranteed by additional parties with accounts at Signature, including St. Lawrence Food Corp., and those accounts had substantial deposits upon which Signature could have exercised its purported right to set off. Signature had a duty to marshal those assets.

> Marshalling is an equitable doctrine requiring a senior creditor, having two funds available to satisfy a single debt, to resort first to the fund that is not available to a junior creditor of the same debtor in order to avoid the inequity which would result from the senior creditor's election to proceed against the only fund available to the junior creditor, thereby preventing the junior creditor from obtaining any satisfaction of its debt.

*Walther v. Bank of New York*, 772 F. Supp. 754, 766-67 (S.D.N.Y. 1991). New York has long recognized the duty to marshal assets. *See, e.g., Fargo v. Squiers*, 154 N.Y. 250, 262 (1897). "A

---

[2] In light of these inconsistencies, it is no wonder that Signature withdrew its offer to produce Mr. Bloch for deposition. The *post-facto* excuse Signature proffers in its Reply Memorandum, *i.e.*, that it withdrew the offer to produce Mr. Bloch "when it became clear that M&I really sought to question Signature on its efforts to locate assets of the Judgment Debtors in connection with Signature's own . . . judgment . . . against the Judgment Debtors," is baseless and contradicted by the record. *See* Orbach Decl. (Docket No. 18), ¶¶ 34-38. Signature made no such assertion at the time it withdrew its offer to produce Mr. Bloch. Signature stated at the time that it was reneging on its offer because "[t]aking blochs [sic] deposition will not get [M&I] to see [Signature's] legal position." Orbach Decl. (Docket No. 18), Ex. 44.

doubly secured creditor who fails to marshal assets . . . may be liable for injuries suffered by the other claimant as a result thereof." 30 *N.Y. Jurisprudence 2d* § 302 (2006).

"Marshaling has traditionally required that both sources of payment belong to a common debtor," *In re Tampa Chain Company, Inc.*, 53 B.R. 772, 778 (Bankr. S.D.N.Y. 1985), and that requirement is satisfied when two debtors should be treated as one, *see id.* at 778 (collecting cases). The corporate Judgment Debtors and their corporate Guarantors were all wholly owned by Judgment Debtor Moise Banayan, *see* Bloch Decl. (Docket No. 14), Ex. K,[3] and Signature plainly treats them as one. Indeed, Signature has represented to this Court – under penalty of perjury -- that there were no "outside deposits" into Ahava account number '3394 or Lewis County Dairy accounts numbers '3408, '3750 and '3769 during the Unrestrained Period, *see* Bloch Decl. (Docket No. 14)., Ex. Q, p. 3, even though Signature's own records show there were multiple deposits into those accounts from St. Lawrence Food Corp. account numbers '3630 and '3785, *see* Bloch Decl. (Docket No. 14), Ex. P; Orbach Decl. (Docket No. 18), Exs. 32 & 33. Since Signature does not count these transfers from St. Lawrence Food Corp. as "outside deposits," it plainly concedes that St. Lawrence Food Corp., Ahava and Lewis County Dairy should be treated as one. Moreover, Signature itself now contends that Banayan moved assets between corporations for fraudulent purposes, *see* Orbach Decl. (Docket No. 18), Ex. 31 at p. 6, n.2 and ¶¶ 15-16, further supporting the conclusion that Banayan's various corporations with Signature accounts should be treated as a common debtor for purposes of the marshaling doctrine. *In re Tampa Chain Company, Inc.*, 53 B.R. at 778.

---

[3] The one possible exception, not material here, may have been Yoni Realty, LLC; Signature has not produced sufficient information to determine the full scope of Banayan's interest in that entity.

1462079.2

In *Walther*, then-Judge Mukasey noted without deciding the question of whether the junior creditor must be a secured creditor for the marshalling doctrine to apply. *Id.* at 767. The application of the doctrine has not been so limited, and the doctrine has even been extended to protect persons other than creditors. 30 *N.Y. Jurisprudence 2d* § 300 (2006). In any event, under New York law an execution creditor is deemed to be a secured creditor. *In re Tampa Chain Company, Inc.*, 53 B.R. at 777-78. If Signature had not frustrated M&I's ability to execute, and had instead restrained the Judgment Debtors' accounts as it was statutorily required to do, then upon the receipt of an execution by M&I, its purported right to set off, if any, would have been subject to its duty to marshal assets.

Signature's own records show that no less than $10,032,211.43 was deposited into the accounts of Ahava, Lewis County Dairy and St. Lawrence Food Corp. alone during the Unrestrained Period. Bloch Decl. (Docket No. 14), Ex. P; Orbach Decl. (Docket No. 18), Ex. 33.[4] That would have been more than enough to satisfy the corporations' alleged indebtedness to Signature *and* M&I's judgments.

---

[4] For purposes of this discussion, this sum excludes loan advances, returned checks, miscellaneous credits, intracompany transfers, transfers from one Judgment Debtor to another, and transfers from the Judgment Debtors to St. Lawrence Food Corp.

1462079.2

## CONCLUSION

For the reasons stated above, and those further reasons stated in M&I's opening cross-motion papers filed on July 14, 2008, M&I's cross-motion for summary judgment in the amount of $719,547.68 should be granted.[5]

Dated: August 11, 2008

BOND, SCHOENECK & KING, PLLC

By: *[signature]*
Louis Orbach (LO 9611)
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

Attorneys for Plaintiff

---

[5] Even if M&I was not entitled to summary judgment, Signature's own summary judgment motion would have to be denied, for the reasons set forth in M&I's opening Memorandum of Law. (Docket No. 22).

10

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2008, I electronically filed the foregoing Plaintiff M&I Equipment Finance Company's Reply Memorandum of Law in Support of its Cross-Motion for Summary Judgment with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Mara B. Levin, Esq.
Herrick, Feinstein LLP
Two Park Avenue
New York, NY 10016-9301
E-mail: mlevin@herrick.com

*/s/ Louis Orbach*
Louis Orbach

1462079.2